[No. S024687. Dec. 24, 1992.]

CITY OF HUNTINGTON BEACH et al., Plaintiffs and Appellants, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Respondents.

## COUNSEL

Gail Hutton, City Attorney, and Arthur J. Folger, Deputy City Attorney, for Plaintiffs and Appellants.

Littler, Mendelson, Fastiff & Tichy and Paul M. Ostroff as Amici Curiae on behalf of Plaintiffs and Appellants.

Richard H. Koppes, Kayla J. Gillan, Lemaire & Faunce and Edward L. Faunce for Defendants and Respondents.

## OPINION

**BAXTER, J.**—We granted review in this case to determine whether detention officers employed by the City of Huntington Beach (hereafter the City) qualify for local safety member status under the Public Employees' Retirement System (hereafter PERS) with respect to their custodial duties and responsibilities. We conclude that the City's election not to treat the jailers as local policemen under Government Code section 20020.9 precludes these employees from qualifying for local safety member status based on their custodial functions. Accordingly, we reverse the judgment of the Court of Appeal with directions to vacate the order of the superior court and to remand the case to that court for proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties have stipulated to the relevant facts herein.

The individual respondents herein are 17 detention officers (hereafter the jailers). The jailers are employees of the City's police department and were hired at various times between 1973 and 1988.

As a condition of their employment, the jailers were required to attend a "jailers' academy" to receive training. The minimum preemployment and postemployment hours of jailers' academy training required of the jailers are

less than the minimum preemployment and postemployment hours of police academy training required of those hired by the City as police officers. The position of detention officer does not require peace officer status, although a sworn senior officer supervises the jail facility.

The jailers have as their primary duty the supervision and custody of persons committed to the City's jail. They are responsible for jail security, inmate control and searches, and the movement of prisoners within the jail. In performing their duties, the jailers have daily contact with prisoners, and are thereby exposed to an increased risk of physical assault from such prisoners.[1] On occasion, force may be required to control uncooperative or hostile prisoners. During calendar year 1986, the use of a "stun gun" was necessary 74 times. However, neither the jailers nor other employees of the City are permitted to carry firearms in the jail facility.

By virtue of their employment with the City, the jailers are entitled to membership in PERS. That membership has been classified as "local miscellaneous." There exists no memorandum of understanding between the jailers and the City which addresses the issues presented herein.

On or about July 29, 1987, the jailers requested that their membership in PERS be reclassified from "local miscellaneous" to "local safety." The PERS executive officer denied this request, and the jailers filed a timely appeal.

The matter was then submitted to an administrative law judge, pursuant to a stipulation of facts and written argument, and without a hearing. The administrative law judge decided to grant the jailers' request for reclassification and filed his proposed decision with the Board of Administration of PERS (hereafter the PERS Board or the Board).

The Board at first declined to adopt the administrative law judge's decision, and undertook to review the matter itself. After considering the parties' written and oral arguments, the Board ultimately adopted the administrative law judge's proposed decision.

The City thereafter filed a petition for writ of administrative mandamus in the superior court. The superior court denied the petition and entered judgment. The Court of Appeal affirmed.

---

[1]The jail facility holds a maximum of 56 male and 16 female prisoners. More than 9,000 inmates were booked during each of the calendar years 1985 and 1986.

DISCUSSION

The Public Employees' Retirement Law (Gov. Code, § 20000 et seq.)[2] establishes a retirement system for certain state and local government employees. PERS was enacted "to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits." (§ 20001.) City employees become members of PERS when their employing city elects, via contract with the PERS Board, to have them covered by PERS. (§§ 20009, 20010.)

Under PERS, a city employee who is a member of the system may be classified as either "local miscellaneous" (§ 20018) or "local safety" (§ 20019), depending on the nature of the principal tasks and duties of the employee's position. The distinction between the two classifications is important, as local safety members receive superior retirement benefits compared to those received by local miscellaneous members. (Compare, e.g., §§ 21021 and 21022.)

During all relevant times herein, local safety members meant "all local policemen, firemen, safety officers, and county peace officers." (§ 20019, as amended by Stats. 1977, ch. 134, § 1, p. 570.)[3] Conversely, local miscellaneous members include all employees who are not local safety members. (§ 20018.)

The facts of this case require us to focus on the "local policeman" category of local safety members. The term "local policeman" is defined by sections 20020, 20020.1, 20020.5, 20020.6, 20020.7, 20020.8, 20020.9 and 20020.10. Only sections 20020 and 20020.9 are of relevance here.

Section 20020 provides in pertinent part that "local policeman" means "any officer or employee of a police department of a contracting . . . city, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active law enforcement service even though the employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement service, but not

---

[2]Unless otherwise indicated, all further statutory references are to the Government Code.

[3]Effective September 9, 1990, section 20019 was amended to include school safety members. (Stats. 1990, ch. 658, § 7.)

excepting persons employed and qualifying as patrolmen or equal or higher rank irrespective of the duties to which they are assigned."[4] Accordingly, local safety member status is authorized under this section for police department employees who clearly and principally engage in active law enforcement activities or who are employed in the rank of patrolman or higher. Section 20020 neither explicitly includes nor excludes detention officers or jail employees as local policemen within its ambit.

Unlike section 20020, section 20020.9 expressly deals with jail employees. It provides in pertinent part: " 'Local policeman' also includes any employee of a contracting . . . city, who is employed in a jail or a detention or correctional facility and having as their primary duty and responsibility the supervision and custody of persons committed to the jail or facility. It shall not include persons employed as clerks, typists, teachers, instructors, or psychologists or to provide food, maintenance, health, or supporting services, even though responsibility for custody and control of persons so committed may be incident to, or imposed in connection with, that service." Section 20020.9, by its own terms, does not apply "unless and until the contracting agency elects to be subject to [it]." The parties herein have stipulated that the City has not elected to confer safety member status upon the jailers under the provisions of section 20020.9.

■ The issue presented is whether the jailers qualify for local safety member status under the PERS system with respect to their custodial duties and responsibilities. The City contends section 20020.9 is the exclusive method by which detention officers having custodial functions may be designated as local policeman under PERS; therefore, its election not to treat the jailers as local policemen under section 20020.9 precludes these employees from attaining local safety member status. Conversely, the jailers and the Board contend that custodial functions constitute active law enforcement within the meaning of section 20020.[5] In their view, section 20020 provides an additional means by which detention officers having custodial functions may be reclassified as local policemen, and it matters not that the City declined to be subject to section 20020.9.

■ The question whether sections 20020 and 20020.9 constitute alternative methods by which detention officers may be classified as local policemen/local safety members under PERS is one of statutory construction.

[4]As used in the PERS statutory scheme, the terms "local policeman" and "local policemen" include, respectively, a "local policewoman" and "local policewomen." (§ 20020.10.)

[5]The jailers do not contend they engage in active law enforcement apart from their custodial functions.

(*Boxx* v. *Board of Administration* (1980) 114 Cal.App.3d 79, 83 [170 Cal.Rptr. 538] [hereafter *Boxx*]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 576 [108 Cal.Rptr. 293] [hereafter *Crumpler*].) As the question is a legal one, we are not bound by either the Board's or the lower courts' interpretation. (*Boxx, supra*, 114 Cal.App.3d at p. 83; *Crumpler, supra*, 32 Cal.App.3d at p. 577.)

▮ The rules governing statutory construction are well established. Our objective is to ascertain and effectuate legislative intent. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Since sections 20020 and 20020.9 are in pari materia, we must construe them together as one statute. (See *Estate of McDill* (1975) 14 Cal.3d 831, 836-837 [122 Cal.Rptr. 754, 537 P.2d 874].) In this regard, all parts of a statute should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others. (*Id.* at p. 837; see *Pacific Southwest Realty Co.* v. *County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].)

▮ Section 20020, enacted in 1945, provides a basic definition of a local policeman. As summarized above, that section provides that a local policeman means any police department employee who clearly and principally engages in active law enforcement activities, or who is employed in the rank of patrolman or higher, irrespective of assigned duties. Section 20020.9, enacted in 1983, expressly provides that *at the election of a contracting city*, a local policeman also includes those employees "having as their primary duty and responsibility the supervision and custody of persons committed to the jail or [detention or correctional] facility."

Taking sections 20020 and 20020.9 together, it is apparent that the Legislature did not consider the supervision and custody of jail inmates to constitute active law enforcement for purposes of section 20020; nor did it intend for the two sections to provide alternative means for reclassifying detention officers with respect to custodial duties. This construction is compelled if section 20020.9, with its optional application feature, is to have any meaningful force or effect. Conversely, the construction of the Board and the jailers renders section 20020.9 both superfluous and irrelevant in contravention of the rule that legislation must be construed as a whole while avoiding an interpretation which renders any of its language surplusage. (*McAlpine* v. *Superior Court* (1989) 209 Cal.App.3d 1, 7 [257 Cal.Rptr. 32].)

The Board relies on *Ames* v. *Board of Retirement* (1983) 147 Cal.App.3d 906 [195 Cal.Rptr. 453] (hereafter *Ames*) in an effort to bolster the argument

that custodial duties constitute active law enforcement under section 20020. In *Ames*, the issue was whether Tulare County correctional officers were entitled to safety member status under the County Employees Retirement Law of 1937 (§ 31450 et seq.). Under the county retirement system, a safety member is defined as "[a]ny person employed by a county, . . . whose principal duties consist of active law enforcement or active fire suppression . . . ." (§ 31469.3, subd. (b).) In *Ames*, the court found that "the key to finding 'active law enforcement' is (1) contact with prisoners on a regular basis; (2) exposure to hazards from prisoner conduct; and (3) risk of injury from the necessity of being able to cope with potential dangers inherent in the handling of prisoners." (147 Cal.App.3d at p. 916; see also *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 822 [111 Cal.Rptr. 841].) Using this rationale, the *Ames* court concluded that the Tulare County correctional officers were entitled to safety membership within the county system.

Contrary to the Board's assertion, *Ames* is not dispositive here. Significantly, the county retirement system and the PERS system differ quite markedly in their respective treatment of correctional and detention officers. Unlike the PERS system, the county system expressly provides that persons hired by the county as jailers (and turnkeys) are engaged in active law enforcement for purposes of that system. (§§ 31469.3, subd. (b), 31470.2.) Moreover, the legislation governing the county system contains no provision as in PERS for making safety member status elective in the case of jailers. Therefore, county jail employees having custodial functions are clearly entitled to safety member status under the county system.

In contrast to the county system, the custodial functions of correctional and detention officers historically were not considered active law enforcement under PERS at either the state or local level. When PERS was first enacted, all employees performing primarily custodial duties were classified as miscellaneous/nonsafety members. (§§ 20013, 20014, 20018, 20020, added by Stats. 1945, ch. 123, § 1, pp. 574-575.) Although state safety member status was subsequently granted to certain state correctional employees (e.g., § 20017.77, added by Stats. 1970, ch. 1600, § 2, pp. 3357-3358 [employees in Department of Corrections and Department of Youth Authority]), local safety member status for local correctional and detention employees became merely optional with contracting agencies (e.g., § 20020.9, § 20021.9, added by Stats. 1972, ch. 1323, § 1, p. 2639 [county detention and correctional employees]). Thus, PERS gives local agencies discretion to determine whether their detention officers and other custodial employees are to be treated as safety members. Given these express statutory

differences between the PERS system and the county system, we conclude that application of the active law enforcement standard in *Ames* is inappropriate in the context of section 20020.[6]

Siding with the Board, the jailers argue that reclassification under section 20020 is authorized because 20020.9 contains no language specifying its exclusivity. According to the jailers, legislative history reveals that the option provided in section 20020.9 for cities to reclassify entire groups of custodial employees simply represents an effort to minimize expenses incurred by PERS in dealing with individual jailer applications for reclassification under section 20020. In this regard, the jailers rely on two legislative documents. One notes that PERS had been handling many appeals to grant safety member treatment to those employed in city jails (1983-1984 Reg. Sess. Bill Analysis, Sen. Bill No. 844, as amended July 13, 1983, dated Aug. 4, 1983); the other observes that such appeals were time consuming and costly, and that PERS had historically decided in favor of the employee (undated, untitled document appearing to reflect statements made by Sen. Dills [author of Sen. Bill No. 844] to unidentified members of an unidentified committee).

We are not persuaded. In the first place, the jailers have failed to demonstrate the appropriateness of taking judicial notice of the undated, untitled legislative document. Second, even were we to take judicial notice of both documents, they merely indicate that the PERS Board apparently had granted local policeman status to some jail employees under section 20020. ██ ██ Notably, however, the documents fall far short of establishing that such employees were actually within the contemplation of section 20020.[7]

If anything, the legislative history quite specifically confirms our view that section 20020.9 was enacted because authorization to classify jail

---

[6] Our construction of sections 20020 and 20020.9 and our rejection of the *Ames* standard is consistent with decisions construing two virtually identical PERS provisions—sections 20021.5 and 20021.9, which deal with the member status of *county* correctional officers. (See *Schaeffer* v. *Public Employees' Retirement System* (1988) 202 Cal.App.3d 609 [248 Cal.Rptr. 647] [reclassification of county correctional officer under 20021.5 properly denied where county employer had not elected to treat its correctional officers as safety members under section 20021.9]; *Tuolumne County Deputy Sheriffs' Assn.* v. *Board of Administration* (1989) 209 Cal.App.3d 1236 [257 Cal.Rptr. 824] [deputized county sheriff employees, restricted in their employment to supervising inmates and maintaining security at county jail, not entitled to safety status since county had not exercised option under section 20021.9].)

[7] Ordinarily, great weight should be given to administrative interpretations unless clearly erroneous. (See, e.g., *Neeley* v. *Board of Retirement, supra,* 36 Cal.App.3d at p. 820.) However, the PERS decisions referred to in the legislative documents submitted by the jailers have not been provided to us and we have had no opportunity to review them.

employees as local policemen had not previously existed. For instance, the Legislative Counsel's Digest reports that section 20020.9 "authorized" cities to include detention officers as local policemen, and that such authorization was "new."[8] Even more to the point, an analysis of the Senate Bill proposing section 20020.9 by the Legislative Analyst explains, by way of background, that under then-existing law, city employees working in detention facilities "are *miscellaneous members* and do not have as generous retirement and disability benefits as safety members." (1983-1984 Reg. Sess. Bill Analysis, Sen. Bill No. 844, as amended in Assem. July 13, 1983, dated Aug. 22, 1983, p. 2 [italics in original].) The analysis concludes that the bill proposes a major change in the law by providing for safety membership for such employees, and that the extension of such membership would be elective for local employers.[9]

Both the jailers and the Board next argue that construing section 20020.9 to be the exclusive authorization for the inclusion of jail employees as safety members under PERS would impermissibly result in an unconstitutional impairment under the federal and state contract clauses for those jailers hired before the effective date of section 20020.9. This argument is predicated upon the notion that if safety membership was previously available under section 20020 (as indicated by the PERS decisions referred to in the legislative documents submitted by the jailers), then application of section 20020.9, effective January 1, 1984, as the exclusive means of obtaining safety membership would unconstitutionally impair the vested contract rights of those jailers hired before 1984. (See *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 447 [326 P.2d 484] [upon employment, a public employee's right to the pension system then prevailing "vests" and any

[8]The Legislative Counsel's Digest provides: "This bill would *authorize* a city which is a contracting agency to include within the local policeman category of local safety members, employees employed in a jail, detention or correctional facility whose primary duty and responsibility is supervision and custody of persons committed thereto; be inapplicable to employees of a contracting agency unless and until it elects to be subject to the provisions. This *new authorization* would impose a new state-mandated local program since its exercise would be subject to negotiation under existing law relating to local public employer-employee relations." (Legis. Counsel's Dig., Sen. Bill. No. 844, 4 Stats. 1983 (Reg. Sess.) Summary Dig., p. 303 [italics added].)

[9]The analysis by the Legislative Analyst provides in pertinent part: "This bill makes two major changes: [¶] 1. First, it provides for *safety membership* to certain contracting city employees working in a jail, or detention or correction facility whose primary responsibility includes the supervision and custody of persons committed to these facilities. Under current law, these employees are *miscellaneous members* and do not have as generous retirement and disability benefits as safety members. The bill excludes specified employees (such as clerical and other supporting staff) working in these facilities from being eligible for safety membership and makes extension of such membership *elective* for the local employers (Section 1 of the bill). [¶] 2. [Provision not relevant here.]" (*Ibid.*, italics in original.)

modifications thereto must be reasonable]; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765] [changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages].)

This argument need not detain us long. Inasmuch as the custodial functions of city jail employees never constituted active law enforcement for purposes of section 20020, any claim under the federal and state contract clauses is without foundation. Clearly, the jailers in this case have no vested right in previous erroneous classifications by the PERS Board.[10] (Cf. *Crumpler, supra*, 32 Cal.App.3d at p. 586.)

Finally, the Board urges us to rule in favor of the jailers because section 20020, as pension legislation, must be "liberally construed and applied to the end that the beneficent policy thereby established may be accorded proper recognition." (*Dillard* v. *City of Los Angeles* (1942) 20 Cal.2d 599, 602 [127 P.2d 917].) ■ We take no issue with the general rule that ambiguities should be resolved in favor of the employee. We observe, however, that "the purpose of this rule is to effectuate the legislative intent which, in this case, is express." (*Charles* v. *Board of Administration* (1991) 232 Cal.App.3d 1410, 1414 [284 Cal.Rptr. 106].) We therefore adhere to the principle that the rule of liberal construction " 'should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended.' [Citation.]" (*Ibid.*)

■ In light of the foregoing, it is clear that the jailers cannot prevail. Their entire case boils down to the theory that employees whose primary duty and responsibility is the supervision and custody of persons committed to jail ought to qualify for local safety member status regardless of the employing city's wishes. The Legislature, however, has quite plainly decided otherwise. Since the City has not opted to treat the jailers as local policemen under section 20020.9, and since their custodial functions do not constitute active law enforcement under section 20020, they fail to qualify for local safety member status under PERS.[11]

---

[10]We express no opinion regarding the rights of jailers who have previously obtained local policeman/local safety member status under section 20020. Such jailers may or may not have rights that cannot legally be disturbed at this juncture, or circumstances may be such that the employing cities are estopped from denying them local safety member status.

[11]Of course, our decision does not preclude any jailer from individually requesting local policeman/local safety member status pursuant to section 20020 upon a showing that he or she principally engages in active law enforcement activities in addition to custodial duties.

## Disposition

The judgment of the Court of Appeal is reversed with directions to vacate the order of the superior court denying a peremptory writ of mandamus and to remand the case to that court for proceedings consistent with this opinion.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and George, J., concurred.

Respondents' petition for a rehearing was denied February 18, 1993.