[No. A075649. First Dist., Div. Two. Nov. 6, 1997.]

ALFRED WATTS, Plaintiff and Appellant, v.
CIVIL SERVICE BOARD OF THE CITY OF OAKLAND, Defendant and Respondent;
THOMAS KENNELLY, Respondent and Real Party in Interest

**COUNSEL**

Ellen Mendelson for Plaintiff and Appellant.

Jayne W. Williams, City Attorney, Joyce M. Hicks, Assistant City Attorney, Wendy P. Rouder, Deputy City Attorney, and Charles O. Triebel, Jr., for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**LAMBDEN, J.**—Alfred Watts (Watts) appeals from the judgment denying his petition for a writ of administrative mandamus. His petition sought review of the Oakland Civil Service Board's (CSB) finding he did not have a reversion interest in his former, misclassified position. We agree with CSB's determination.

### BACKGROUND

The City of Oakland (City) hired Watts and another individual on November 26, 1990, as supervising real estate agents.

In the 1980's, CSB oversaw a study of the job duties, classifications, and salary schedule of its workforce, which was referred to as the "Multi-Purpose Job Analysis" (MPJA). The results of the MPJA were implemented in 1992.

The MPJA study found Watts was performing the duties of a chief appraiser rather than the work of a supervising real estate agent. Consequently, in July 1992, the City notified Watts that it had reallocated his position to the "Chief Appraiser" classification.

The other employee who had been hired as a supervising real estate agent remained in that classification until his retirement. On February 28, 1994, after this employee retired, the City hired real party in interest, Thomas Kennelly (Kennelly), as the supervising real estate agent.

In the spring of 1995, the City decided to eliminate the position of chief appraiser, since appraisal work had declined. Watts received notice of the elimination of his position and his layoff in June 1995.

Watts appealed to CSB seeking to displace Kennelly from the supervising real estate agent position. CSB upheld the City's determination and made the following findings: (1) Watts could not return to a position in his former classification because he did not achieve his new position through an open or promotional examination process; (2) Watts held no "seniority" in any classification other than the one of chief appraiser because employees whose positions were reclassified as a result of the MPJA carried seniority with them into the new classification.

Watts filed a petition for a writ of administrative mandamus with the superior court on April 22, 1996. The trial court issued its statement of decision, denying the petition.

### DISCUSSION

Watts contends he has seniority over Kennelly and he should be reinstated as the supervising real estate agent. The trial court found he had no reversion rights in this position, but he contends we should reverse because the trial court: (1) failed to consider the entire administrative record, (2) interpreted the City's "Law and Rules of the Civil Service Board" (rules) incorrectly, (3) based its decision on authority from an unpublished Court of Appeal decision, and (4) did not consider the violation to his due process rights. For the reasons set forth below, we are unpersuaded.

### I.   *Standard of Review*

■   The standard of review is limited to determining whether the trial court's findings are supported by substantial evidence. (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732,

642 P.2d 792].) Since the facts in this case are undisputed and the appeal concerns questions of law, we conduct de novo review and are not bound by the trial court's stated reasons or interpretations of the rules. (*City of Huntington Beach* v. *Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].)

## II. *Administrative Record Reviewed*

██ Watts claims the statement of decision establishes the court refused to admit the transcript of the hearing and all evidence submitted by Watts. In the statement of decision, the court stated, in part: "The record of the administrative proceedings as submitted by the Declaration of Estrellita Willis, Secretary to Respondent Civil Service Board, having been received into evidence and examined by the court, and the court having duly taken judicial notice of the Personnel Manual of Rules of the City of Oakland (hereinafter 'Personnel Rules') and the unpublished case of <u>Brenda Ivey v. Oakland Civil Service Board</u> (Court of Appeal, First Appellate District, No. A071596) filed May 14, 1996, and no additional evidence having been received, and arguments having been presented, and the matter having been submitted for decision, the court makes the following statement of decision in support of its denial of a peremptory writ. . . ."

Watts claims the court only considered evidence submitted by CSB and Kennelly, and this alleged error supports a reversal (see *Aluisi* v. *County of Fresno* (1958) 159 Cal.App.2d 823 [324 P.2d 920] (*Aluisi*); Code Civ. Proc., § 1094.6). The court, according to Watts, could not determine whether the weight of the evidence, as required under *Chamberlain* v. *Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 368 [138 Cal.Rptr. 155], supported the agency's findings, because the record is incomplete.

CSB argues the trial court may have refused to admit the record because Watts failed to comply with Code of Civil Procedure section 1094.6, subdivision (c), which provides "[t]he complete record of the proceedings shall be prepared by the local agency or its commission, board, officer, or agent which made the decision and shall be delivered to the petitioner within 190 days after he has filed a request therefor." Watts did not request CSB to prepare the record, but rather lodged a transcript prepared by his friend. Further, CSB argues, the court had an adequate record before it; Watts does not refer to any citation to the administrative hearing which would have impacted the court's decision.

Watts points to nothing in the record which establishes the record was inadequate to enable the court to "pass upon the validity of the administrative action," which is what the trial court found in *Aluisi, supra*, 159

Cal.App.2d 823, 828. Further, Watts does not claim to have complied with Code of Civil Procedure section 1094.6, subdivision (c), and declared he asked Estrellita Willis, the secretary to CSB, to provide him with the tapes of the hearing. After receiving the tapes, he asked his friend "to listen to the tapes and type them into a written transcript."

The transcript was not prepared pursuant to Civil Code section 1094.6, and the trial court properly refused to consider the transcript typed by Watts's friend as part of the record.

### III. *The Rules*

When layoffs occur, rule 9, section 9.02(d)[1] provides for reversion rights as follows: ". . . City employees who possess permanent status in one classification and who, either through open or promotional examination, are appointed to a position in another classification, in the event of layoff from that class, shall have the right to be reinstated to a position in their former classification. This right shall extend to both personnel with tenure in a class so affected, and to individuals serving probationary periods in such class at the time of layoff. [¶] To implement the foregoing, that employee in the lower classification with the least number of seniority and efficiency points shall be laid-off."

Rule 9, section 9.02 specifies in pertinent part: "Whenever it becomes necessary to reduce staff . . . no permanent employee in the affected class shall be laid off while there are employees without status in the same class. . . ." Watts claims under rule 9 the employees with "status" in a position are protected over the employees without status in a position, and the possession of status is protected by rule 3, section 3.06(a). He has more status than Kennelly; therefore, he should have become the supervising real estate agent and Kennelly should have been laid off. Additionally, he claims, since rule 9, section 9.02(d) provides protections to employees in probationary status in the new position, "[i]t is anomalous to think that the drafters of the Rules of the Civil Service intended that long-term employees, promoted involuntarily, as a result of a City-wide reclassification survey, be denied the same protections as those provided to reclassified probationary employees."

Watts contends the requirement of taking a competitive examination under rule 9, section 9.02(d) did not apply to him because rule 3, section 3.06, which does not require an exam, applies when an employee's position is

---

[1] CSB requested judicial notice pursuant to Evidence Code section 452, subdivision (b) of the Personnel Manual of the City (which contains the rules), and the City's municipal ordinance No. 8979 C.M.S. We grant this request.

redesignated. Alternatively, he asserts, the MPJA and the state certification examination required for the chief appraiser position constituted the "open or promotional examination" contemplated under rule 9, section 9.02(d).

## A. *Interpreting the Rules*

The first issue is whether rule 9, section 9.02(d) applies only when the employee is appointed to a higher classification through open or promotional examination, or when, as here, the employee's position was reallocated as the result of a citywide reclassification study. Watts argues rule 9, section 9.02(d) does not apply when the City elevates an employee to a higher position by reclassifying the position.

According to Watts, rule 3, section 3.06 rather than rule 9, section 9.02(d) governs those situations when a position has been reclassified as a result of a citywide or department-wide study. Rule 3, section 3.06 provides in part: "In the event of a City-wide or department-wide classification study, the following treatment of incumbents of reclassified positions may take place: [¶] (a) . . . When a position is reallocated to a class of higher grade, the incumbent may be redesignated to the class of higher grade without examination providing he has performed the duties of the class for one year prior to the inception of the classification study. . . . [¶] (b) . . . When a position is reallocated to a class of lower grade, the incumbent may be redesignated to the position of a lower grade at no loss in benefits, including his salary at the time of the downgrading. . . ."

Under rule 3, section 3.06(a), Watts maintains, the City redesignated his position, which is defined as "the designation of the incumbent in a position without affecting his status in the position in event of a title change." (Rule 1, § 1.01(ee).) Without citing any authority for this point, Watts claims the redesignated position is not the new classification, the redesignated position is the old classification; the employee therefore maintains status in the prior position in the event of a title change. Thus, he claims, he is a redesignated supervising real estate agent. He asserts: "The plain language of the definition of the term redesignation implies that the benefits of the definition are to apply to the position which the redesignated employee held prior to the title change."

CSB argues rule 3, section 3.06(a) does not waive or alter the requirement of a competitive exam under rule 9, section 9.02(d). Watts's attempt to interpret the rules is unnecessary because the language of rule 9, section 9.02(d) is certain and clear. (See *Copeland* v. *Raub* (1940) 36 Cal.App.2d 441, 445 [97 P.2d 859] ["There is no occasion to employ the well-known

rules applicable only to the construction of a statute when its language is uncertain or ambiguous."].)

Further, even assuming rule 3, section 3.06(a) had some relevance, CSB argues the record does not support Watts's contention the chief appraiser is of a higher grade than the supervising real estate agent. Watts claims he was "upgraded" to the chief appraiser position, although other than asserting he received a pay increase, he provides no evidence from the record to support this contention. Indeed, this contention contradicts the statements Watts made in his letter dated March 30, 1995, to the City's personnel director. Watts stated: "The change of my job title from the Supervising Real Estate Agent to Chief Appraiser was not intended to be a promotional change. It was a lateral change." The pay increase, CSB asserts, does not indicate a higher grade position because, after the MPJA was implemented, pay raises were given to many employees as a labor market wage scale correction.

In contrast to Watts's interpretation of the rules, CSB has constructed rule 3, section 3.06(a) to have the following benefits: When position reclassification occurs, incumbents performing the duties of the reclassified position for more than a year will not have to test to remain in the reclassified position and will not lose seniority they have accrued in the misclassified position, because such seniority will carry forward with them once the position is correctly reclassified. CSB argues an administrative agency's long-term interpretation of its own rules should be given great weight. (See *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592] [" 'Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight. . . .' [Citation.]"].)

CSB's construction is consistent with the plain language of rule 9, section 9.02(d), whereas Watts's interpretation makes the language regarding an open or promotional examination in the rule meaningless after a citywide classification study. Moreover, Watts's interpretation contradicts the purpose of the MPJA. The MPJA resulted in reallocating employees to other positions not because of a change in their duties, but due to improper job titles. Accordingly, it would contravene the objectives of the MPJA to provide employees with reversion rights in their former, misclassified position after the MPJA revealed they were not performing the job duties associated with their former positions.

In the reply brief and during rebuttal at oral argument, Watts, through his counsel, argued that rule 3, section 3.05(b) provided him with reversion

rights in the supervising real estate agent position. Watts's counsel misrepresented to the court at oral argument that this rule's applicability had been presented in the opening brief; thus, CSB was denied the opportunity to ever respond to this contention. In any event, we conclude that this argument has no merit.

Rule 3, section 3.05(b) states in pertinent part: "Whenever any appointing authority proposes that a new position or new class shall be created, or that a significant change has been made in the duties, authority and responsibilities of an existing position, such appointing authority shall submit to the Personnel Director, the following information: [¶] . . . [¶] . . . [¶] If a position is reallocated to another class by reason of changed duties and responsibilities, the incumbent may, upon approval by the Board, continue in the position if the maximum rate of pay for the class of position to which the position is reallocated is not higher than the maximum rate of pay for the class of position to which it was formerly allocated. Any person whose position is so reallocated shall be placed upon the reinstatement list for positions of the same class as that from which he was so separated. In case a position, on account of additional duties and responsibilities, is reallocated to a class of position for which the maximum rate of pay is higher, it shall be filled by appointment from the reinstatement or eligible list for the class to which the position is reallocated. In the absence of such reinstatement or eligible list, the incumbent shall continue in the position until such time as a reinstatement or an eligible list shall have been created, from which the position can be filled."

This section does not apply to Watts. This section only applies when "a position is reallocated to another class by reason of changed duties and responsibilities" (rule 3, § 3.05(b)). Watts's duties and responsibilities did not change; rather, the only change was in the classification of his position.

We find rule 9, section 9.02(d) explicitly provides reversion rights only to employees who are appointed to a higher position "through open or promotion examination," and nothing in the rules or record supports Watts's argument that rule 3, section 3.06 waives the open examination requirement and rule 3, section 3.05(b) provides him reversion rights in the supervising real estate agent position.

### B. *Open Examination*

Even if rule 9, section 9.02(d) does apply to him, Watts contends he satisfied the requirements of this rule by participating in the MPJA and taking the state real estate license exam. Watts failed to raise this argument

at the administrative hearing; thus, the record does not contain evidence of the state examination. Even if the record did establish he took the exam, however, we find this argument has no merit.

With regard to the MPJA, Watts argues the MPJA created new job classifications and new positions. Rule 1, section 1.01(y) defines a new position as "a position created through the authorized addition of a position not previously existing." Watts maintains the MPJA "was the examination process for appointment to the position, and petitioner was appointed to the position after participation in an 'unassembled examination' in which review and rating of his qualifications and experience and licensure status resulted in a promotion, via redesignation, to the upgraded job title of Chief Appraiser." Watts argues, CSB's personnel manual defines examination as "all the tests of fitness, taken together, that are applied to determine the eligibility of applicants for positions of any class in the classified service." An unassembled examination is "an examination in which applicants are subject only to general controls as to the manner in which required material is submitted to the examining staff for review and ratings, and usually not involving the calling of applicants together." He claims all employees "participated in this examination and as a result of the examination, employees were promoted or demoted, based upon the determinations or the Civil Service staff's review and rating."

Additionally, Watts contends he took the state exam for his real estate license, which also qualifies as an unassembled, promotional examination. Until he became a certified real estate appraiser, Watts asserts, he did not possess the minimum qualifications for the chief appraiser position. The certification examination, which he took during his work hours, qualified him for the position, and the City compensated him for the costs of the exam and the time spent taking the exam.

CSB argues neither the MPJA nor the state licensing examination can be construed to be promotional exams, and such an argument defies the plain language of rule 9, section 9.02(d). Rule 1, section 1.01(o) and rule 4, section 4.03 state a competitive examination is one conducted under the direction and with the approval of CSB and the City's personnel director, which clearly disqualify the state license exam. Rule 1, section 1.01(o) defines a competitive examination as one "either assembled or unassembled, in which one or more candidates are in competition, either with each other or against a standard established by [CSB] as the minimum acceptable which candidates must possess in order to competently perform the duties of a position." Rule 4, section 4.03 provides: "The open competitive examinations shall, after public notice, be open to all applicants who meet the

standards or requirements fixed by [CSB], with regard to experience, age, education, physical condition, and such other factors as may relate to the ability of the candidates to perform with efficiency the duties of the position. [¶] Standards of requirements shall be determined by [CSB], upon recommendation of the Personnel Director, after conferences with the appointing authorities, with reference to education, experience, or physical condition which relate directly to the duties of the position to be filled. Candidates may be required, in filing their applications, to submit such certificates of general or special qualifications, conditions or attainment as the good of the service requires, consistent with the approved examination announcement."

Watts's contention would make rule 9, section 9.02(d) meaningless to the extent the rule grants reinstatement rights only to a person appointed to another position, and the appointment must be from an eligible list created by the City from the results of an examination (rule 1, § 1.01(d)). The MPJA does not satisfy the definition of examination in the personnel manual, because it is not a method to determine the "eligibility of applicants." Rather, it is the process of determining the work an employee is already performing. A state examination also fails to create an eligibility list, nor does it relate to a City civil service eligibility list.

Accordingly, we find Watts did not meet the requirements of rule 9, section 9.02(d). In light of this finding, Watts's argument the record was incomplete because the trial court refused to augment the record to include evidence of his taking the real estate appraisers examination has no merit. Including this evidence would not have had any consequence in our review of the record. Furthermore, Watts never moved to augment the administrative record to include this evidence, but merely attached exhibits to his responsive papers. Thus, the court properly refused to review the examination as part of the record.

## IV. *Using an Unpublished Decision*

■ Watts contends the court erred when it stated in its statement of decision it was taking notice of *Ivey* v. *Oakland Civil Service Bd.* (May 14, 1996) A071596 (*Ivey*), an unpublished opinion by Division One of the First District. California Rules of Court, rule 977 prohibits using such an opinion as authority (see *Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 431 [133 Cal.Rptr. 809]).

Kennelly argues the court took judicial notice of *Ivey* under Evidence Code section 452, but the assertion the court "used" the holding is speculation. Kennelly notes that "the trial court did not cite the *Ivey* case as

precedent which must control the outcome of this case, nor can it be presumed that the independent judgment of the trial court was constrained or restricted by the *Ivey* decision in any manner."

We agree it cannot be presumed the trial court used the unpublished opinion as authority. Furthermore, we do not review the trial court's reasoning, but only look to see whether the trial court's action is correct on any legal theory (*Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 673 [242 Cal.Rptr. 84]). Here, we find the rules and record support the trial court's action, and we refuse to consider whether the trial court reached its decision by using an unpublished case.

## V. *Due Process*

Watts contends his due process rights were violated, because the City failed to notify him that accepting the chief appraiser position removed "all status petitioner held in the position of Supervising Real Estate Agent." He states he clearly had a vested interest in the latter position and it could only be terminated upon notice, with good cause shown. (See *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45 [112 Cal.Rptr. 805, 520 P.2d 29].)

Kennelly argues the reclassification did not deprive Watts of his seniority with the City. His seniority right was carried forward in its entirety to his new classification. He never possessed reversion rights in the supervising real estate position; therefore he did not have to receive notice of losing such rights.

CSB contends, "Notice to the employees . . . was not legally necessary because employees had no legal right to choose whether or not they wished their positions to be reclassified: reclassification of positions under the MPJA was a systemic correction of positions that were erroneously placed in a wrong classification . . . ." Rule 3, section 3.02(a) provides for a citywide scheme for classification of positions, and rule 3, section 3.05 provides the means to correct the misclassifications in the form of a reclassification study. By the terms of rule 3, section 3.05(b), employees who believe the conclusions of a citywide classification study are erroneous have a right to be heard, but Watts did not pursue this remedy.

We find Watts could not choose to retain the position of supervising real estate agent, and as already noted, the MPJA established he had not performed the job duties of this position. Accordingly, his only vested right was

to carry his seniority into his new classification, which occurred. If he is now contesting the accuracy of his job classification, his challenge must fail because he never exhausted his administrative remedy pursuant to rule 3, section 3.05(b).

## DISPOSITION

We affirm the judgment, and Watts is to pay costs.

Kline, P. J., and Ruvolo, J., concurred.