ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 63)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 163)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 27)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Docs. 59 & 61)
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 43)
JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE
The above captioned cases all involve the Supreme Court's decision in Janus v. AFSCME Council 31 , --- U.S. ----, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018) and its effect on public sector unions in California. Having read and considered the papers and heard oral argument, the Court GRANTS in their entirety the following motions filed by the various Defendants[1] in each case:
• Babb v. California Teachers Ass'n , No. 8:18-cv-00994-JLS-DFM : Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment ( Babb Mem., Doc. 63) filed by the California Teachers Association, National Education Association, and United Teachers of Los Angeles;[2]
• Wilford v. National Education Ass'n , No. 8:18-cv-1169-JLS-DFM : Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment (Wilford Mem., Doc. 163) filed by American Federation of Teachers, California Federation of Teachers, California Teachers Association, Certificated Hourly Instructors, Long Beach City College Chapter, Coast Federation of Educators, Local 1911, Community College Association, Exeter Teachers Association, Mt. San Antonio College Faculty Association, Inc., National Education Association, Orange Unified Education Association, Saddleback Valley Educators Association, Sanger Unified Teachers Association, Savanna District Teachers Association, and South Orange County Community College District Faculty Association;[3]
*867 • Matthews v. United Teachers Los Angeles , No. 2:18-cv-06793-JLS-DFM : Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment (Matthews Mem., Doc. 27) filed by California Teachers Association, National Education Association, San Diego Education Association, and United Teachers Los Angeles;[4]
• Martin v. California Teachers Ass'n , No. 2:18-cv-08999-JLS-DFM : Motion to Dismiss (Martin State Mem., Doc. 59) filed by Eric Banks, Xavier Becerra, Arthur A. Krantz, Erich Shiners, and Priscilla Winslow (the "State Defendants")[5] ; Motion to Dismiss (Martin Union Mem., Doc. 61) filed by California Teachers Association, National Education Association, and Riverside City Teachers Association;[6] and
• Few v. United Teachers Los Angeles , No. 2:18-cv-09531-JLS-DFM : Motion to Dismiss Count II (Few Mem., Doc. 43) filed by United Teachers Los Angeles.[7]
I. BACKGROUND
On June 27, 2018, the Supreme Court decided Janus and overruled Abood v. Detroit Board of Education , 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent. Janus , 138 S.Ct. at 2486.
The Plaintiffs in Babb are current or former public-school teachers who refused to join teachers' unions because they disapproved of their political advocacy and collective-bargaining activities. (Babb Third Amended Complaint ¶¶ 14-20, Doc. 90.) Prior to Janus , the Plaintiffs were required to pay agency fees to the unions as a condition of their employment. (Id. ) See Cal. Gov. Code § 3546(a). Plaintiffs allege that the compulsory collection of agency fees violates Janus. (Babb Third Amended Complaint ¶ 21.) Plaintiffs bring federal claims for relief for violation of the First Amendment pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, and California state law claims for conversion, trespass to chattels, replevin, unjust enrichment, and restitution. (Id. ¶¶ 41-42.) Plaintiffs seek two forms of relief: (1) that compulsory agency fees be declared unconstitutional and enjoined; and (2) that the Union Defendants be required to repay all agency fees they received before Janus. (Id. ¶ 43 c-j.) The Union Defendants move to dismiss all claims. (See Babb Mem. at 1.)
Wilford is, for the purposes of the pending motions, identical to Babb. The Wilford Plaintiffs are also non-union teachers who allege that the compulsory collection of agency fees is unconstitutional after Janus. (Wilford First Amended Complaint ¶¶ 1-7, 25-29, Doc. 155.) They also bring federal claims for violation of the First Amendment pursuant to § 1983 (id. ¶¶ 41-47 *868 ), and state law claims for conversion (id. ¶¶ 48-51) and restitution (id. ¶¶ 52-57). Further, as in Babb , the Wilford Plaintiffs seek an order enjoining the future collection of agency fees (id. Demand for Relief ¶ C) and requiring the Union Defendants to repay all agency fees received prior to Janus (id. ¶ D). The Union Defendants move to dismiss all claims. (See Wilford Mem. at 1.)
Matthews is very similar to Wilford and Babb , as the Matthews Plaintiffs are non-union teachers who allege that compulsory collection of agency fees is unconstitutional after Janus. (Matthews Complaint ¶¶ 16, 18-19, Doc. 1-1.) However, the Matthews Plaintiffs bring no federal claims for relief, but rather claims for unfair competition under California's Unfair Competition Law ("the UCL") (id. ¶¶ 35-45); conversion (id. ¶¶ 46- 51); trespass to chattels (id. ¶¶ 52-57); unjust enrichment (id. ¶¶ 58-61); and money had and received (id. ¶¶ 62-65). As with Babb and Wilford , the Matthews Plaintiffs seek to enjoin the future collection of agency fees (id. Prayer for Relief ¶ 6) and to order the Union Defendants to repay all agency fees received prior to Janus (id. ¶ 2). The Union Defendants move to dismiss all claims. (See Matthews Mem. at 1.)
Martin is different from Matthews , Wilford , and Babb in significant respects. Plaintiffs are public-school teachers who were union members prior to Janus but resigned thereafter. (See Martin First Amended Complaint at 2-3, Doc. 47.) The Martin Plaintiffs' first claim is, similar to Babb , Wilford , and Matthews , that compulsory collection of agency fees violates the First Amendment. (Id. ¶¶ 15-26.) Some Plaintiffs allege that they would not have joined the union or would have resigned earlier if not for the agency fee requirement, while others claim that "they were led to believe that union membership was a mandatory condition of their employment" and "were never informed of their constitutional right to quit the union." (Id. ¶¶ 17-19.) As part of first claim, Plaintiffs seek declaratory and injunctive relief to prevent the future collection of agency fees (id. ¶ 84) as well as "refunds equal to the amount of the [agency fees] that [the Union Defendants] extracted from [Plaintiffs] regardless of whether they stayed in the union or resigned" (id. ¶ 24). Plaintiffs' second claim is that their First Amendment rights were violated because, while they were union members, they had to opt out of making a $ 20 annual payment to the Union Defendants if they did not wish to make the payment. (Id. ¶¶ 27-42.) Plaintiffs seek injunctive relief to prevent the Union Defendants from continuing to charge the $ 20, as well as retrospective relief for the funds paid while they were members. (Id. ¶¶ 39-42.) With their third claim, Plaintiffs challenge the federal and state constitutionality of California Government Code § 3558, which provides for public school employers to share with unions that represent their employees the contact information of bargaining unit employees whom the unions represent, unless the employee has requested that his or her contact information not be shared. (Id. ¶¶ 43-56.) The fourth claim is asserted only by Plaintiff Martin and alleges that California Education Code § 45060 violates the First Amendment because it provides that a union member must send a letter to the union, rather than to the employer, if the union member wishes to terminate membership dues deductions. (Id. ¶¶ 57-64.) Plaintiffs' fifth claim alleges that collective bargaining through an exclusive representative violates the First Amendment. (Id. ¶¶ 65-74.) Finally, the sixth claim is asserted only by Plaintiff Martin and alleges that the collective bargaining agreements between California school districts and the Union Defendants *869 violate federal antitrust laws. (Id. ¶¶ 75-81, 89.)
The Union Defendants move to dismiss all of the Martin Plaintiffs' claims except the portion of the second claim that seeks retrospective monetary relief. (Martin Union Mem. at 1.) Plaintiffs have consented to dismissal of their fifth claim, as well as to dismissal of the prospective portions of their first and second claim. (Martin Union Opp. at 4, 23, 35.) Further, the State Defendants separately move to dismiss claims one and four. (Martin State Mem. at 1.)
Finally, the Plaintiff in Few is a public-school teacher in the Los Angeles Unified School District. (Few First Amended Complaint ¶ 14, Doc. 38.) Few brings two claims for relief, and United Teachers of Los Angeles seeks to dismiss only his second claim, which alleges that collective bargaining through an exclusive representative violates the First Amendment. (See id. ¶¶ 53-64; Few Mem. at 1.) Few's second claim is identical to the Martin Plaintiffs' fifth claim.
On February 13, 2019, the Court granted the California Attorney General's request to intervene in Wilford , Babb , and Matthews to defend the constitutionality of California Government Code § 1159. (Intervention Order in Babb , Doc. 72.) While the constitutionality of § 1159 is also relevant to Martin , the Attorney General was already a party to Martin , as noted above. Pursuant to the Court's Order, the Attorney General filed opening briefs in Wilford , Babb , Matthews , and Martin , the Plaintiffs in each case filed a response, and the Attorney General and Union Defendants filed replies. (See id. ) However, the parties essentially filed one set of briefs in Wilford and simply incorporated those briefs by reference in their briefs in Babb , Matthews , and Martin. Thus, for ease of reference, to the extent the Court refers to the briefs filed pursuant to the Intervention Order, the Court will simply refer to the Wilford briefs. (See AG Opening Brief, Doc. 174; Plaintiffs' Opposition to AG, Doc. 175; AG Reply, Doc. 180; Union AG Reply, Doc. 181.)
II. LEGAL STANDARD
In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. Ashcroft v. Iqbal , 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. See Daniels-Hall v. Nat'l Educ. Ass'n , 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Papasan v. Allain , 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the *870 opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca , 652 F.3d 1202, 1216 (9th Cir. 2011).
III. DISCUSSION
First, as is relevant to Wilford , Babb , Matthews , and Martin , the Union Defendants argue that the Plaintiffs' claims for prospective relief from the compulsory collection of agency fees are moot because Defendants are fully complying with Janus and have no intention of doing otherwise. (See Babb Mem. at 3.)
Second, as is relevant to Wilford , Babb , and Martin , the Union Defendants argue that they are entitled to a good-faith defense to Plaintiffs' § 1983 claims for a refund of agency fees because the Union Defendants "received the fees in compliance with California statutes and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized [agency] fees." (See Wilford Mem. at 1.)
Third, as is relevant only to Martin , the Union Defendants argue that the membership dues the Martin Plaintiffs paid while union members were voluntarily paid and thus not compelled pursuant to Janus. (Martin Union Mem. at 8.)
Fourth, as is relevant to Wilford , Babb , Matthews , and Martin the Union Defendants argue that the Plaintiffs' state law claims are preempted by the Educational Employment Relations Act ("EERA") and California Government Code § 1159. (See Wilford Mem. 11, 13.)
Fifth, as is relevant only to Martin , the Union Defendants argue that Government Code § 3558, which requires school districts to disclose all of their employees' contact information to the Union Defendants, does not violate the First Amendment. (Martin Union Mem. at 22.)
Sixth, as is relevant only to Martin , the Union and State Defendants argue that Martin does not have standing to challenge Education Code § 45060, which requires employees to direct their resignation requests to the union, rather than their employers, because his resignation has already been processed. (Martin Union Mem. at 30; Martin State Mem. at 7.)
Seventh, as is relevant only to Martin , the Union Defendants argue that Martin's antitrust claim must be dismissed because, for multiple reasons, the "purportedly anticompetitive conduct here falls entirely outside the scope of federal antitrust law." (Martin Union Reply at 13.)
Finally, as is relevant only to Few ,[8] United Teachers Los Angeles argues that Few's claim that exclusive representation violates the First Amendment is foreclosed by Minnesota State Board for Community Colleges v. Knight , 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). (Few Mem. at 6.)
A. Mootness of Claims for Prospective Relief (Babb, Wilford, Martin , and Matthews )
This Court has twice held that claims for prospective relief to prevent the collection of agency fees post- Janus are moot. See Yohn v. California Teachers Ass'n , Case No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ; Babb v. California Teachers Ass'n , Case No. 8:18-cv-00994-JLS-DFM, 2018 WL 7501267 (C.D. Cal. Dec. 7, 2018) (dismissing claims for prospective relief against state defendants as moot). The claims for prospective relief in Wilford , Babb , Matthews , and Martin are indistinguishable, *871 and the Union Defendants have again submitted declarations attesting to their commitment to no longer enforce California Government Code § 3546 and to fully comply with Janus.[9] Indeed, the Martin Plaintiffs admit that their claims for prospective relief are moot "in light of the [Union Defendants'] demonstrated compliance with Janus and their iron-clad promise to comply with Janus going forward." (Martin Union Opp. at 4.) Further, every other district court to consider this issue has found claims for prospective relief moot after Janus . See, e.g. , Cook v. Brown , 364 F.Supp.3d 1184, 1188 (D. Or. 2019) ; Carey v. Inslee , 364 F.Supp.3d 1220, 1225-27 (W.D. Wash. 2019) ; Danielson v. Inslee , 345 F.Supp.3d 1336, 1339-40 (W.D. Wash. 2018).
Accordingly, the Union Defendants' Motions to Dismiss the Plaintiffs' claims for prospective relief are GRANTED.[10]
B. Section 1983 Good-Faith Defense (Babb , Wilford , and Martin )
"The threshold question of whether the good faith defense is available to private parties in § 1983 actions has been answered affirmatively by the Ninth Circuit." Cook v. Brown , 364 F.Supp.3d at 1190. In Clement v. City of Glendale , 518 F.3d 1090 (9th Cir. 2008), the court held that the defendant towing company could assert a good faith defense to § 1983 liability where the plaintiff alleged that the towing company unconstitutionally seized her vehicle without notice. Id. at 1097. Clement "acknowledged that the Supreme Court in Wyatt v. Cole and again in Richardson v. McKnight had held open whether private defendants could avail themselves of the good faith defense in a § 1983 action." Cook , 364 F.Supp.3d at 1190-91 (citing Clement , 518 F.3d at 1096-97 ; Wyatt v. Cole , 504 U.S. 158, 169, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) ("[W]e do not foreclose the possibility that private defendants faced with § 1983 liability ... could be entitled to an affirmative defense based on good faith."); Richardson v. McKnight , 521 U.S. 399, 413-14, 117 S.Ct. 2100, 138 L.Ed.2d 540, (1997) (" Wyatt explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense ... we do not express a view on this last-mentioned question.")). Wyatt recognized that "principles of equity and fairness may suggest ... that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability." 504 U.S. at 168, 112 S.Ct. 1827.
In Clement , the Ninth Circuit held that "the facts of this case justify allowing [the towing company] to assert such a good faith defense." Clement , 518 F.3d at 1097. Specifically, the court noted that the towing company "did its best to follow the law" and that the "tow was authorized by the police department, conducted under close police supervision and appeared to be *872 permissible under both local ordinance and state law." Id. Further, "[a]lthough not entirely consistent in their approaches, every circuit court to address the question has held that some type of good faith defense is available to private parties sued for constitutional violations." Carey , 364 F.Supp.3d at 1228 (citing Pinsky v. Duncan , 79 F.3d 306, 311-12 (2d Cir. 1996) ; Vector Research, Inc. v. Howard & Howard Attorneys, P.C. , 76 F.3d 692, 698-99 (6th Cir. 1996) ; Jordan v. Fox, Rothschild, O'Brien & Frankel , 20 F.3d 1250, 1275-78 (3d Cir. 1994) ).
On indistinguishable facts, every district court to consider whether unions that collected agency fees prior to Janus have a good-faith defense to § 1983 liability have answered in the affirmative. See, e.g. , Danielson v. AFSCME Council 28 , 340 F.Supp.3d 1083, 1084-87 (W.D. Wash. 2018) ; Cook , 364 F.Supp.3d at 1190-94 ; Carey , 364 F.Supp.3d at 1227-1233 ; Crockett v. NEA-Alaska , 3:18-CV-00179 JWS, 367 F.Supp.3d 996, 1002-07, 2019 WL 1212082, at *3-6 (D. Alaska March 14, 2019) ; Janus v. AFSCME Council 31 , Case No. 15 C 1235, 2019 WL 1239780, at *1-3 (N.D. Ill. March 18, 2019) ; Hough v. SEIU Local 521 , No. 18-CV-04902-VC, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019) ; Lee v. Ohio Education Association, et al. , 366 F.Supp.3d 980, 982-83, 2019 WL 1323622, *2-3 (N.D. Ohio 2019). The Court finds these courts' reasoning persuasive and applicable here.
The Union Defendants argue that they collected agency fees from Plaintiffs "at a time when California [statutes] and controlling U.S. precedent expressly allowed the collection of such fees." (See Babb Mem. at 9.) Indeed, this Court has acknowledged that "prior to Janus , [the Unions] were merely following the 40-year-precedent of Abood. " Yohn , 2018 WL 5264076, at *4. Plaintiffs argue that the good-faith defense should not apply because: (1) the most analogous common law tort to their § 1983 claims, conversion, rejects any consideration of the tortfeasor's state of mind; (2) the good-faith defense extends only to individuals and not entities; (3) Union Defendants cannot establish good faith unless they present evidence of their subjective states of mind; (4) the Union Defendants must prove that they complied with Abood to avail themselves of the good-faith defense; (5) the good-faith defense is inapplicable to claims for equitable relief such as backpay, restitution, and unjust enrichment; and (6) they are seeking the return of unconstitutionally seized property (the agency fees they paid prior to Janus ) and not "collateral" damages stemming from the seizure. (See Babb Opp. at 1-2.)
1. Common Law Tort Analogy
Plaintiffs argue that Wyatt "compels courts to look to the most analogous common-law tort, and it allows courts to recognize a defense only if that tort would have conferred similar immunities when section 1983 was enacted." ( Babb Opp. at 3-4.) Plaintiffs claim that "[t]he common-law tort most analogous to the union's unconstitutional confiscation of wages is conversion, and conversion is a strict-liability tort that is unconcerned with whether the defendant acted in good faith." (Id. at 4.) Plaintiffs' argument fails for a number of reasons.
First, as the Union Defendants note, the portion of Wyatt from which Plaintiffs derive their "rule" dealt with immunity from § 1983 liability, not the good-faith defense. (See Babb Reply at 4.) See Wyatt , 504 U.S. at 164, 112 S.Ct. 1827 ("If parties seeking immunity were shielded from tort liability when Congress enacted [ § 1983 ] we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken *873 under color of state law.") (emphasis added); see also Carey , 364 F.Supp.3d at 1229 ("[W]hile [ Wyatt ] did discuss common law analogues in dicta, that discussion was largely in reference to the history of qualified immunity.")
Second, "Plaintiffs' construction of the good faith defense lacks precedent in the Ninth Circuit." Danielson , 340 F.Supp.3d at 1086. Clement gives no indication that courts must analyze a common law analogue to apply the good-faith defense. See Clement , 518 F.3d at 1097. Further, "[i]nsofar as courts have analyzed the common law analogue to a plaintiff's § 1983 claim, none have done so to bar the good faith defense." Carey , 364 F.Supp.3d at 1229-30 (citing Pinsky , 79 F.3d at 312 (discussing Wyatt and finding that the § 1983 claim was analogous to malicious prosecution)); Franklin v. Fox , No. C 97-2443 CRB, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (noting that the claim for violation of the Sixth Amendment right to counsel "is not easily analogized to the common law torts of malicious prosecution or abuse of process" for purposes of determining which party bears the burden but applying the good faith defense anyway)).[11]
Third, even assuming "the 'common law analogue' requirement from Wyatt does apply, conversion is not the most closely analogous common law claim." Danielson , 340 F.Supp.3d at 1086. Indeed, conversion "does not account for the fact that Plaintiffs' constitutional claim is rooted in the First Amendment." Carey , 364 F.Supp.3d at 1230. "Conversion involves taking another's property, regardless of intent, whereas the gravamen of the First Amendment claim in this case is that the Union Defendant[s] expended compelled agency fees on political and ideological activities that Plaintiffs oppose." Danielson , 340 F.Supp.3d at 1086. In other words, Plaintiffs' First Amendment claim turns not upon the Union Defendants' receipt of Plaintiffs' property, but upon the dignitary harm resulting from being compelled to support speech with which they disagree. See id. Thus, the Court agrees with the other courts that have held that Plaintiffs' claims are most similar to dignitary torts, such as defamation, or to abuse of process because the Union Defendants used government processes to collect agency fees. Id. ; Carey , 364 F.Supp.3d at 1230 ; Cook , 364 F.Supp.3d at 1191 ; Crockett , 367 F.Supp.3d at 1005-06, 2019 WL 1212082, at *5. "Because these torts do have scienter requirements," even under Plaintiffs' proposed rule, the good-faith defense is available to the Union Defendants. Carey , 364 F.Supp.3d at 1230.
2. Application of Good-Faith Defense to Entities
Plaintiffs next argue that the good-faith defense applies only to individuals, not entities such as the Union Defendants. (See Babb Opp. at 9.) Plaintiffs again conflate qualified immunity with the good-faith defense and argue that because qualified immunity applies only to individual officials, not government entities, the Union Defendants cannot avail themselves of the good-faith defense. (Id. at 9-10.) However, the controlling case law in this Circuit - Clement - allowed a private towing company to assert the good-faith defense. See 518 F.3d at 1097. Accordingly, the Court rejects Plaintiffs' argument.
3. Subjective Belief
Plaintiffs next argue that, if the good-faith defense applies, the Union Defendants *874 have the burden to show their subjective state of mind, and Plaintiffs should be given the opportunity for discovery on this issue. ( Babb Opp. at 14.) Further, Plaintiffs argue that the Union Defendants cannot rely on Abood to establish their belief that agency-fee collection was lawful because the Supreme Court issued "warnings" that collecting agency fees was "constitutionally dubious." (Id. at 16.) See also Janus , 138 S.Ct. at 2485 ("[A]ny public-sector union seeking an agency-fee provision in a collective-bargaining agreement must have understood that the constitutionality of such a provision was uncertain.") Indeed, as Danielson notes, "the subjective state of mind of a party asserting good faith is a common inquiry in cases discussing the defense." 340 F.Supp.3d at 1086 ; see Clement , 518 F.3d at 1097 (concluding that towing company "did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions").
Although the Supreme Court may have hinted in dicta that it would eventually overrule Abood , "reading the tea leaves of Supreme Court dicta has never been a precondition to good faith reliance on governing law." Cook , 364 F.Supp.3d at 1192. For the 40 years prior to Janus , agency fee collection was constitutional pursuant to Abood. Thus, "[a]ny subjective belief [the Union Defendants] could have had that [ Abood ] was wrongly decided and should be overturned would have amounted to telepathy." Danielson , 340 F.Supp.3d at 1086. Further, even assuming that the Union Defendants did expect Abood to be overruled, "such an expectation cannot produce subjective belief in unconstitutionality when [they are] also aware that the prior holding has not been overruled." Carey , 364 F.Supp.3d at 1229. Moreover, in the qualified immunity context, state officials are entitled to rely on Supreme Court precedent even if that precedent's reasoning has been questioned; applying a higher standard to private individuals would be inequitable. See Cook , 364 F.Supp.3d at 1193 (citing Davis v. United States , 564 U.S. 229, 241, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (declining to apply exclusionary rule to evidence generated in searches that were consistent with then-binding case law because police were entitled to rely on that precedent, even though its reasoning had been questioned); Pinsky , 79 F.3d at 313 ("[I]t is objectively reasonable to act on the basis of a statute not yet held invalid.")); see also Wyatt , 504 U.S. at 168, 112 S.Ct. 1827 (finding that good-faith defense is based on "principles of equity and fairness").
Thus, the Court concludes that the Union Defendants need not produce evidence of their subjective belief that agency fee collection was constitutional.
4. Compliance with Abood
Next, Plaintiffs argue that the Union Defendants must prove that they complied with Abood in order to assert a good-faith defense and that Plaintiffs are entitled to take discovery on this issue. ( Babb Opp. at 20.) The Union Defendants argue that Plaintiffs have not alleged that they failed to comply with Abood and, regardless, a claim "that [the Union Defendants] received fees not permitted by Abood would be a different claim on behalf of a different class." ( Babb Reply at 12.)
The Court agrees with the other district courts that have found this argument unavailing. See Crockett , 367 F.Supp.3d at 1006-07, 2019 WL 1212082, at *6 ; Carey , 364 F.Supp.3d at 1232. Here, just as in Carey , the Babb Plaintiffs have amended their Second Amended Complaint to "re-state the legal argument contained in their Opposition brief." 364 F.Supp.3d at 1232. (See Babb Third Amended Complaint ¶ 29.) However, even with the amendment, *875 the Babb Plaintiffs still do not allege that the Union Defendants failed to comply with Abood. (See Babb Third Amended Complaint ¶ 29 ("[The Union Defendants' must [ ] show that they complied with pre- Janus case law.") Further, even if they had alleged failure to comply, the Third Amended Complaint provides no facts to support such an allegation.
In short, Plaintiffs' lawsuits are not about whether the Union Defendants complied with Abood. Thus, "[t]heir argument that discovery is needed on a different claim for different relief on a different class before the court can apply the good-faith defense simply does not track." Crockett , 367 F.Supp.3d at 1007, 2019 WL 1212082, at *6.
5. Application to Equitable Claims
Plaintiffs also argue that the good-faith defense does not apply to their equitable claims for relief. ( Babb Opp. at 22.) Plaintiffs again rely on cases involving qualified immunity, not the good-faith defense, for this argument. (Id. ) Even assuming the rule from qualified immunity cases applies to the good-faith defense, "[a] plaintiff may not circumvent qualified immunity or the good faith defense simply by labeling a claim for legal damages as one for equitable restitution." Carey , 364 F.Supp.3d at 1232 (citing Lenea v. Lane , 882 F.2d 1171, 1178-79 (7th Cir. 1989) ("Regardless of what label is placed on the monetary relief which Lenea wants, 'equitable' or 'legal damages,' it remains a personal monetary award out of the official's own pocket.")).
The Court agrees with Crockett and Carey , both of which concluded that Plaintiffs' demand that the Union Defendants "refund" their agency fee payments sounds in law, not equity. The Plaintiffs' agency fees "paid for [the] ongoing costs of representation" and "[t]here is no segregated fund to which Plaintiffs' payments can now be traced, and therefore any relief would be paid from the Union Defendants' general assets." Crockett , 367 F.Supp.3d at 1006, 2019 WL 1212082, at *5. A "personal claim against the defendant's general assets ... is a legal remedy, not an equitable one." Id. (quoting Montanile v. Board of Trustees , --- U.S. ----, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016) ).
6. Return of Unconstitutionally Seized Property
Finally, Plaintiffs argue that the monetary relief they seek is qualitatively different from what they term "collateral damages" and more akin to the return of unconstitutionally seized property. As such, Plaintiffs argue that a good faith defense is unavailable, and that whenever property is unconstitutionally taken, even if in good-faith reliance on a long-standing decision of the United States Supreme Court, it must be returned. (See Martin Opp. at 1.) Although mentioned only briefly in their Opposition (id. ), at oral argument, Plaintiffs relied on Harper v. Virginia Department of Taxation , 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) for support. Harper announced the general rule that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect." Id. at 97, 113 S.Ct. 2510. This rule is of no assistance to Plaintiffs in the present context; in arguing a good faith defense to a § 1983 claim, the Union Defendants assume, without conceding, that Janus applies retroactively.
The question here - one not addressed by Harper -is whether Union Defendants are precluded from asserting a good faith defense in this context, where Plaintiffs made payments for agency fees later determined to be unconstitutional. For the most part, the cases Plaintiffs cite have *876 nothing to say about a good faith defense to a § 1983 claim. More significantly, the cases cited involve the return of discrete and identifiable property, not a refund of fees paid. See, e.g. , Wyatt v. Cole , 994 F.2d 1113, 1115 (5th Cir. 1993) (involving § 1983 damages from unconstitutional seizure of cattle); Clement , 518 F.3d at 1090 (involving § 1983 damages from unconstitutional seizure of vehicle); United States v. Rayburn House Office Building Room 2113 Washington, D.C. 20515 , 497 F.3d 654, 656 (D.C. Cir. 2007) (ordering return of documents seized from a congressman's office in violation of the Speech and Debate clause despite good faith reliance on search warrant). In that sense, Plaintiffs' argument here is a refrain of their claim that the most analogous state law claim is one for conversion; a wrong for which the remedy might be replevin - the return of the specifically stolen property. As the Court noted above, that is not the gist of this case. It cannot be overlooked that the pre- Janus regime consisted of an obligation by the Plaintiffs to pay fees to the Union Defendants, and a concomitant obligation by the Union Defendants to use those fees to bargain on Plaintiffs' behalf. While the Supreme Court has determined that such an arrangement violated Plaintiffs' First Amendment rights, it is not the case that the agency fees remain in a vault, to be returned like a seized automobile. As the Union Defendants cannot retract their performance on this implied contract, it would be inequitable to force them to repay Plaintiffs' agency fees.
In short, the cases before the Court present a fundamentally different issue than those cited by the Plaintiffs. The Union Defendants did not merely rely on a presumptively valid state statute; they relied on the 40-year-precedent of Abood. The Court agrees with the Honorable Judge Chhabria who noted, "there is a strong argument that when the highest judicial authority has previously deemed conduct constitutional, reversal of course by that judicial authority should never, as a categorical matter, result in retrospective monetary relief based on that conduct." Hough , 2019 WL 1785414, at *1.
Accordingly, the Court rejects all of Plaintiffs' arguments against application of the good-faith defense. The Court agrees with every other district court to have decided this question and concludes that "[t]he good faith defense should apply here as a matter of law." Danielson , 340 F.Supp.3d at 1086. Thus, the Babb , Wilford , and Martin Plaintiffs' § 1983 claims are DISMISSED WITH PREJUDICE.
C. Voluntariness of Membership Dues (Martin )
As noted above, the Martin Plaintiffs were dues-paying members of their respective unions prior to Janus. They seek recovery of an amount equal to the agency fees that non-members were required to pay based on the theory that they "chose to join the union and pay the difference between full membership dues and [agency fees] that they would have otherwise paid." (Martin Union Opp. at 5.) Essentially, though the Martin Plaintiffs did not actually pay agency fees, they argue that such fees were subsumed within their membership dues. (Id. ) Thus, "they had no choice in whether to pay the mandatory portion of the dues that was imposed on every member of their bargaining unit." (Id. )
First, because the Court concludes that the Union Defendants have a good-faith defense to retroactive monetary relief based on Janus , the Martin Plaintiffs' claim fails as a matter of law. Further, the Court agrees with Crockett , which held that an indistinguishable claim failed. See *877 367 F.Supp.3d at 1007-09, 2019 WL 1212082, at *7. In short, the Martin Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and "[t]he fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced." Id.
D. State Law Claims for Refund of Agency Fees (Wilford, Babb, Matthews , and Martin )
1. EERA Preemption
First, the Union Defendants argue that Plaintiffs' state law claims for relief are preempted by the Educational Employment Relations Act ("EERA"), which "completely displaced any common law claims related to the collection of [agency fees]." (Wilford Mem. at 11-13.)
The EERA expressly authorizes the collection of agency fees. Cal. Gov. Code §§ 3543(a), 3546(a) ; see Cumero v. Public Employment Relations Bd. , 49 Cal. 3d 575, 587, 262 Cal.Rptr. 46, 778 P.2d 174 (1989) ("EERA ... contains provisions expressly... allowing ... for compulsory nonmember service fees"). Challenges to agency fees, even on constitutional grounds, are subject to the Public Employment Relations Board's ("PERB") exclusive jurisdiction. See Link v. Antioch Unified School Dist. , 142 Cal. App. 3d 765, 769, 191 Cal.Rptr. 264 (1983) ("Looking beyond the constitutional label given to plaintiffs' grievances herein, the substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling." (internal citation omitted)). The California Supreme Court has held that EERA broadly preempts state tort claims that allege conduct that is even "arguably protected or prohibited under EERA." El Rancho Unified School Dist. v. Nat'l Educ. Ass'n , 33 Cal.3d 946, 960, 192 Cal.Rptr. 123, 663 P.2d 893 (1983). "[W]hat matters is whether the underlying conduct on which the suit is based - however described in the complaint - may fall within PERB's exclusive jurisdiction." Id. at 954 n.13, 192 Cal.Rptr. 123, 663 P.2d 893.
In Crockett , the court found that the plaintiffs' state law claims (indistinguishable from those asserted here) failed as a matter of law "because there can be no common law liability for conduct authorized by state statute." 367 F.Supp.3d at 1008, 2019 WL 1212082, at *7. Crockett involved Alaska's version of the EERA and PERB, but the Court finds Crockett 's reasoning persuasive and applicable here. " Janus does not change the fact that [the EERA] displaced any state common law tort claims that could have been brought with regard to [agency fees] collected prior to Janus. " Id. at 1009, 2019 WL 1212082 at *7. Plaintiffs argue that "statutes authorizing the collection of agency fees are to be treated as though they never existed." ( Babb Opp. at 24.) However, the Court "cannot ignore the fact that the Union Defendants' collection of [agency fees] prior to Janus was authorized by state statute that was constitutional under controlling precedent. The court cannot now go back and impose tort liability under common law for that conduct." Crockett , 367 F.Supp.3d at 1009, 2019 WL 1212082, at *8.
Plaintiffs also argue unpersuasively that EERA does not encompass their state law claims. (See Wilford Opp. at 12.) Plaintiffs argue that their state law claims require the Court to determine "the proper ownership of the money the Unions received from the Plaintiffs," whereas "PERB would consider whether the collection of fees constituted an unfair practice, which is wholly unrelated to ownership." (Id. at 13.) However, Link rejected this *878 precise argument and concluded that the claims were preempted because "the substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling." Link , 142 Cal. App. 3d at 769, 191 Cal.Rptr. 264. Plaintiffs' citations to San Lorenzo Education Association v. Wilson , 32 Cal. 3d 841, 187 Cal.Rptr. 432, 654 P.2d 202 (1982) and California Association of Professional Scientists v. Schwarzenegger , 137 Cal. App. 4th 371, 40 Cal.Rptr.3d 354 (2006) (" CAPS ") are inapposite and unavailing. In San Lorenzo , no preemption was found because PERB does not have jurisdiction over disputes arising from contracts between unions and public employers. See 32 Cal. 3d at 853, 187 Cal.Rptr. 432, 654 P.2d 202 ("[A]t issue is whether the union, under the terms of the collective bargaining agreement, can file a civil suit against a noncomplying employee."). In CAPS , the plaintiffs' claim was that a state law "impermissibly conflicts with the terms of the [collective bargaining agreement] and therefore violates the state and federal constitutional prohibitions against impairing the obligations of contracts." 137 Cal. App. 4th at 381, 40 Cal.Rptr.3d 354. As the Union Defendants note, the California courts have concurrent jurisdiction with PERB over breach of collective bargaining agreement claims pursuant to California Labor Code § 1126. See Fresno Unified Sch. Dist. v. Nat'l Educ. Assn. , 125 Cal. App. 3d 259, 274, 177 Cal.Rptr. 888 (1981) ("[A]s to the contract cause of action the trial court had concurrent jurisdiction pursuant to Labor Code section 1126.").
Accordingly, the Court concludes that Plaintiffs' common law tort claims are preempted by the EERA.
2. Government Code § 1159
Furthermore, even assuming that Plaintiffs' claims are not preempted by the EERA, the Court concludes that Government Code § 1159 is an independent and adequate grounds upon which to dismiss Plaintiffs' state law claims.
Enacted on September 14, 2018, and effective immediately, California Government Code § 1159 provides:
(a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.
(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.
(c) The enactment of this section shall not be interpreted to create the inference that any relief made unavailable by this section would otherwise be available.
Cal. Gov. Code § 1159(a) - (c).
The purpose of § 1159 is explicit: "to provide certainty to public employers and employee organizations that relied on state law, and to avoid disruption of public employee labor relations, after the Supreme Court's decision in [ Janus ]." Id. § 1159(e)(2). Further, § 1159 declares that "[a]pplication of this section to pending claims and actions clarifies existing state law rather than changes it." Id. § 1159(e)(1). "Public employees who paid agency or fair share fees as a condition of *879 public employment in accordance with state law and Supreme Court precedent prior to June 27, 2018, had no legitimate expectation of receiving that money under any available cause of action." Id. Thus, "[a]pplication of this section to pending claims will preserve, rather than interfere with, important reliance interests." Id.
Because § 1159 clearly precludes their state law claims for relief, Plaintiffs argue primarily that it is unconstitutional in that its retroactive application violates their due process rights. (See Wilford Opp. at 18.) Plaintiffs also briefly argue that § 1159 effectuates an unlawful taking; violates the California Constitution's single-subject rule; and violates the "separation of powers" doctrine. (See Plaintiffs' Opp. to AG at 14-17.) The Court addresses each issue below.
i. Due Process
In both federal and California due process analysis, the threshold question in determining retroactive application is whether the legislation changed or clarified the law. See McClung v. Emp't Dev. Dept. , 34 Cal. 4th 467, 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015 (2004) ; Beverly Community Hosp. Ass'n v. Belshe , 132 F.3d 1259, 1265 (9th Cir. 1997). "A statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment because the true meaning of the statute remains the same." McClung , 34 Cal. 4th at 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015 (internal alterations and quotations removed); see also Beverly , 132 F.3d at 1265 (explaining that whether statute clarifies or changes the law is a "key threshold issue" and that there would be retroactive application issues only if the statute changed the law).
Here, the California legislature was explicit that § 1159 "clarifies existing state law rather than changes it," because "[p]ublic employees who paid agency or fair share fees as a condition of public employment in accordance with state law and Supreme Court precedent prior to [ Janus ], had no legitimate expectation of receiving that money under any available cause of action." § 1159(e)(1). As the Union Defendants note, at the time agency fees were collected, the Unions could not be held liable under any state law theory for collection of such fees, and § 1159 merely reinforces this point. (Wilford Reply at 12.) "A clarified law is simply a statement of what the law has always been." In re Marriage of Walker , 138 Cal. App. 4th 1408, 1426, 42 Cal.Rptr.3d 325 (2006). Further, although "a legislative declaration of an existing statute's meaning is neither binding nor conclusive on the courts in construing the statute," the Court may give "due consideration to the Legislature's views." Id. ; see also Beverly , 132 F.3d at 1265-66 (deferring to legislature's description of legislation as a "clarification"). In response, Plaintiffs argue that, if it were true that § 1159 merely clarified the law and they could not pursue their state law claims even in its absence, § 1159 is "superfluous." (See Wilford Opp. at 19.) However, clarifying statutes can be "remedial in nature and intended by the Legislature to be applied at the earliest possible time, including application to all cases not then finally decided." City of Redlands v. Sorensen , 176 Cal. App. 3d 202, 212, 221 Cal.Rptr. 728 (1985).
Thus, the Court concludes that § 1159 merely clarifies rather than changes the law. However, even assuming that § 1159 changes the law, Plaintiffs' procedural and substantive due process arguments fail under California and federal law, as discussed below.
a. State and Federal Procedural Due Process
Under both the federal and state constitutions, when a law "creates a *880 substantive rule of law granting immunity to certain parties against certain types of claims ... 'the legislative determination provides all the process that is due.' " Ileto v. Glock, Inc. , 565 F.3d 1126, 1142 (9th Cir. 2009) (citing Logan v. Zimmerman Brush Co. , 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ); see also Jenkins v. County of L.A. , 74 Cal. App. 4th 524, 537, 88 Cal.Rptr.2d 149 (1999) (rejecting federal and state due process challenges to retroactive application of a statute barring certain negligence claims and explaining that "the legislative determination provides all the process that is due" (quoting Logan , 455 U.S. at 433, 102 S.Ct. 1148 )). Plaintiffs argue against the application of Ileto to no avail. They rely on Logan and related California cases to argue that "a plaintiff must be given some opportunity to present her claim. Section 1159 violates this principle by purporting to cut off Plaintiffs' rights of action with no opportunity to present them." (Wilford Opp. at 23.)
However, Logan and the California cases upon which Plaintiffs rely involved changing the procedures through which a plaintiff could pursue his or her claims, not creating a substantive rule of law granting immunity to certain parties against certain types of claims, as is the case here. For example, Logan examined whether a change in a state administrative agency's procedures comported with due process. As Ileto noted, Logan "explicitly limited its holding to 'a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the [underlying] claim.' " Ileto , 565 F.3d at 1142 (quoting Logan , 455 U.S. at 433, 102 S.Ct. 1148 ) (alteration in original). Indeed, Logan noted that "the State remains free to create substantive defenses or immunities for use in adjudication-or to eliminate its statutorily created causes of action altogether," and in such cases "the legislative determination provides all the process that is due." Logan , 455 U.S. at 432-33, 102 S.Ct. 1148.[12] Here, if § 1159 changes the law, it grants the Union Defendants immunity from all state law causes of action related to agency fee collection, and the California legislature's determination "provides all the process that is due." Ileto , 565 F.3d at 1142.
b. State Substantive Due Process
Plaintiffs' state substantive due process argument also fails. Under the California constitution, the legislature "can provide for retroactive application of a statute if it has a reasonable basis for doing so." L.A. Cty. v. Superior Court , 62 Cal. 2d 839, 844, 44 Cal.Rptr. 796, 402 P.2d 868 (1965). "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to *881 which the retroactive application of the new law would disrupt those actions." In re Marriage of Bouquet , 16 Cal. 3d 583, 592, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976). The Court concludes that the California legislature had a reasonable basis for retroactively applying § 1159 to bar Plaintiffs' claims. First, Plaintiffs' reliance interest is minimal in that Abood would have prevented them from any recovery of agency fees prior to Janus. Further, § 1159 serves the significant state interests of providing "certainty to public employers and employee organizations that relied on state law, and [avoiding] disruption of public employee labor relations" after Janus . See Cal. Gov. Code § 1159(e)(2). As noted throughout, the Court finds the Union Defendants' reliance on Abood reasonable and in good faith, and § 1159 seeks to protect these reliance interests. Further, the lawsuits that Section 1159 bars - including those currently before the Court- seek to impose massive retroactive liability on public employers and unions that relied on state law, which would certainly disrupt public employee labor relations.
c. Federal Substantive Due Process
Finally, Plaintiffs' federal substantive due process argument fails. "Where, as here, Congress has expressed its clear intent that the legislation be retroactive, 'the constitutional impediments to retroactive civil legislation are now modest.' " Ileto , 565 F.3d at 1138 (quoting Landgraf v. USI Film Prods. , 511 U.S. 244, 272, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ). "[T]he potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." Landgraf , 511 U.S. at 267, 114 S.Ct. 1483. "We have squarely held that although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." Ileto , 565 F.3d at 1141. Here, Plaintiffs' claims have not vested because they have not obtained final judgments. Thus, § 1159 is subject to rational basis review and its retroactive application must be upheld so long as the California legislature's decision was not "irrational or arbitrary." See id. at 1140. For the reasons discussed in relation to the California substantive due process argument, the Court concludes that retroactively applying § 1159 is neither arbitrary nor irrational.
ii. Other Constitutional Challenges
Plaintiffs' Fifth Amendment Takings Clause argument is foreclosed by Ileto. As noted above, because Plaintiffs have not obtained a final unreviewable judgment, their rights in their causes of action have not vested and "[t]he Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights." See Ileto , 565 F.3d at 1141 (quoting Landgraf , 511 U.S. at 266, 114 S.Ct. 1483 ) (emphasis in original)).
Plaintiffs also argue that Senate Bill 846, which added § 1159 to the Government Code, violates the single subject rule of the California Constitution, which provides that "[a] statute shall embrace but one subject, which shall be expressed in its title." Cal. Const., art. IV, § 9. " '[A]n initiative measure does not violate the single-subject requirement if, despite its varied collateral effects, all of its parts are 'reasonably germane' to each other,' and to the general purpose or object of the initiative." Brosnahan v. Brown , 32 Cal. 3d 236, 245, 186 Cal.Rptr. 30, 651 P.2d 274 (1982) (quoting *882 Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization , 22 Cal. 3d 208, 230, 149 Cal.Rptr. 239, 583 P.2d 1281 (1978) ). "[T]he single subject rule is to be 'construed liberally,' " and "[n]umerous provisions, having one general object, if fairly indicated in the title, may be united in one act." Id. Here, the title of Senate Bill 846 is "Employment." Section 1159 and the rest of the sections identified by Plaintiffs (Plaintiffs Opp. to AG at 16) are "reasonably germane" to employment. Accordingly, the Court concludes that Senate Bill 846 does not violate the single-subject rule.
Finally, Plaintiffs argue that § 1159 "violates the separation-of-powers doctrine." (Plaintiffs' Opp. to AG at 17.) Plaintiffs argue that § 1159 "effectively denies Plaintiffs a judicial forum to assert their state-law claims," and "[f]or the reasons stated in In re National Sec. Agency Telecomm. Records Litig. , 671 F.3d 881, 899 (9th Cir. 2011), this violates the separation-of-powers doctrine." (Id. ) In re Nat'l Sec. Agency , however, states that separation of powers concerns would be raised if "faced with a situation in which Congress has enacted legislation and simultaneously declared that legislation to be immune from any constitutional challenge by the plaintiff." In re Nat'l Sec. Agency , 671 F.3d at 889 (quoting Bartlett v. Bowen , 816 F.2d 695, 703 (D.C. Cir. 1987) ). Section 1159 does no such thing, and thus In re Nat'l Sec. Agency is irrelevant to Plaintiffs' claims. Thus, the Court concludes that § 1159 does not violate the separation-of-powers doctrine.
Accordingly, the Court concludes that § 1159 is constitutional and bars all of Plaintiffs' state law causes of action. Thus, the Court GRANTS the Motions to Dismiss and DISMISSES WITH PREJUDICE Plaintiffs' state law causes of action.[13]
E. Constitutionality of California Government Code § 3558 (Martin )
The Martin Plaintiffs argue that California Government Code § 3558 violates the First Amendment or alternatively that it violates state tort law and their state and federal constitutional rights to privacy. Section 3558 provides that public school districts must provide unions that serve as exclusive representatives of bargaining units with:
the name, job title, department, work location, work, home, and personal cellular telephone numbers, personal email addresses on file with the employer, and home address of any newly hired employee within 30 days of the date of hire or by the first pay period of the month following hire, and ... with a list of that information for all employees in the bargaining unit at least every 120 days unless more frequent or more detailed lists are required by an agreement with [the union].
Cal. Gov. Code § 3558. An employee may opt out of having such information shared with the union. See id. ; see also § 6254.3.
As the Union Defendants explain, § 3558 codifies the California Supreme Court's decision in County of Los Angeles v. L.A. County Employee Relations Committee , 56 Cal. 4th 905, 157 Cal.Rptr.3d 481, 301 P.3d 1102 (2013), which held that *883 disclosure of public employees' contact information to a union does not violate their privacy rights under California's constitution. Id. at 931-32, 157 Cal.Rptr.3d 481, 301 P.3d 1102 ; see also § 3558 ("The provision of information under this section shall be consistent with the employee privacy requirements described in County of Los Angeles v. Los Angeles County Employee Relations Com. (2013) 56 Cal.4th 905, 157 Cal.Rptr.3d 481, 301 P.3d 1102.") There, the Court explained that "[b]ecause the union's duty [of fair representation] extends to all employees in the bargaining unit, regardless of union membership, the union must have the means of communicating with all employees." County of L.A. , 56 Cal. 4th at 931, 157 Cal.Rptr.3d 481, 301 P.3d 1102. Thus, "[d]irect communication between unions and all bargaining unit employees is essential to ensure that nonmembers' opinions are heard." Id. Further, the court found that giving the unions "this contact information will not coerce employees into joining the union. An employee who chooses not to join a union still enjoys the benefits of union representation." Id.
The Union Defendants argue that § 3558 does not violate the First Amendment. (Id. at 25.)[14] Plaintiffs allege that § 3558 amounts to a "compelled disclosure," to which the Supreme Court applies "exacting scrutiny." (See Babb First Amended Complaint ¶ 51.) "At least in the context of organized labor, the impingement of First Amendment rights must, at a minimum, satisfy 'exacting scrutiny'; i.e., it must 'serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.' "[15] Mentele v. Inslee , 916 F.3d 783, 790 (9th Cir. 2019) (quoting Janus , 138 S.Ct. at 2465.)
The Union Defendants argue that § 3558 "does not infringe on Plaintiffs' First Amendment rights-and is not subject to exacting scrutiny-because the content-neutral contact information that is disclosed under the statute (unless Plaintiffs opt out) reveals nothing about their associations and beliefs." (Martin Union Mem. at 25.) Indeed, as the Union Defendants note and Plaintiffs impliedly concede (see Martin Union Opp. at 26-27), every compelled-disclosure case in which the Supreme Court applied exacting scrutiny involved disclosure of information that linked individuals to a cause, an association, or political activity, or identified the individuals' political beliefs. For example, in NAACP v. Alabama , 357 U.S. 449, 462-63, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Court held that compelled disclosure of NAACP membership was subject to exacting *884 scrutiny.[16] The Court focused on the harm stemming from "compelled disclosure of affiliation with groups engaged in advocacy. " Id. at 462, 78 S.Ct. 1163 (emphasis added). "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs. " Id. (emphasis added). The disclosures here are not disclosures of membership or affiliation, but rather of employees' contact information, which reveals nothing about the employees' beliefs or political views. Plaintiffs cite to no authority providing that content-neutral disclosures such as those required by § 3558 are subject to exacting scrutiny. Plaintiffs argue that § 3558 "will have the undeniable effect of deterring those employees from engaging in anti-union speech." (See Martin Union Opp. at 27.) Plaintiffs allege no facts to support this claim, and further, it is illegal for the Union Defendants to discriminate against employees for not joining their respective unions. See Cal. Gov. Code § 3543.6(b).
However, even assuming that exacting scrutiny applies, the Court concludes that § 3558 survives such scrutiny. Section 3558 serves a compelling government interest. As the California Supreme Court noted in County of L.A. , the Union Defendants have an obligation to communicate with members and non-members pursuant to their duty of representation, so the Union Defendants "must have the means of communicating with all employees." County of L.A. , 56 Cal. 4th at 931, 157 Cal.Rptr.3d 481, 301 P.3d 1102. This "[d]irect communication between unions and all bargaining unit employees is essential to ensure that nonmembers' opinions are heard." Id. (emphasis added). Thus, California has a compelling interest in ensuring that unions can communicate directly with employees.
Further, the Court concludes that this interest cannot be achieved through means significantly less restrictive of associational freedoms. The Union Defendants must be able to communicate directly with all employees, and access to employee contact information is "fundamental to the entire expanse of a union's relationship with the employees," permitting the union to "perform its broad range of statutory duties in a truly representative fashion and in harmony with the employees' desires and interests." NLRB v. CJC Holdings, Inc. , 97 F.3d 114, 117 (5th Cir. 1996). Plaintiffs quibble that the disclosures are too broad because they include employees' personal addresses and phone numbers. (Martin Union Opp. at 25-26.) However, the Union Defendants must be able to communicate directly with all employees and having employees' personal information furthers this interest. Further, in the context of heated negotiations with school districts, the Union Defendants need a method to communicate with employees outside of work. Moreover, any associational freedom restriction presented by § 3558 is significantly minimized by the fact that employees can opt out of the disclosures.
Accordingly, the Court concludes that § 3558 does not violate the Martin Plaintiffs' First Amendment rights. The Martin Plaintiffs admit that their "privacy-tort claims cannot survive unless this Court concludes that section 3558 violates the federal Constitution." (Martin Union *885 Opp. at 30.) Furthermore, Plaintiffs' claim for violation of California's right to privacy also fails because § 3558 merely codifies the California Supreme Court's ruling in County of L.A. Finally, Plaintiffs' claim for violation of federal privacy rights fails because "the scope and application of the [California] state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts." Am. Acad. of Pediatrics v. Lungren , 16 Cal. 4th 307, 326, 66 Cal.Rptr.2d 210, 940 P.2d 797 (1997). Thus, the Court GRANTS the Union Defendants' Motion and DISMISSES WITH PREJUDICE Plaintiffs' claim challenging the constitutionality of § 3558.
F. Constitutionality of California Education Code § 45060 (Martin )
The Union Defendants argue that Plaintiff Martin lacks standing to challenge California Education Code § 45060 and, even if he did not, § 45060 does not violate his First Amendment rights. (Martin Union Mem. at 30-31.)
Education Code § 45060 provides, in relevant part:
Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board. The employee organization shall be responsible for processing these requests.
Cal. Educ. Code § 45060(e). Further, § 45060 requires school employees to revoke their consent to payroll deductions "in writing." Id. §§ 45060(a), (c).
Martin alleges that § 45060 violates his First Amendment rights for two reasons: (1) it requires him to direct his request to cancel membership dues deductions to the union, rather than to his employer; and (2) it requires such requests to be in writing. (Martin First Amendment Complaint ¶¶ 58, 60-62.) Citing to Janus , Martin alleges that "[e]very public employer and every public-employee union must honor and implement the wishes of an employee who has withdrawn his 'affirmative consent' to union fees or assessments-regardless of how a public employee chooses to communicate his instructions." (Id. ¶ 57.) On July 6, 2018, Martin sent an email to his employer, Riverside Unified School district, asking that all union-related payroll deductions cease. (Id. ¶ 60.) However, Martin claims that § 45060(e) "instructs the school district to continue diverting [his] paycheck toward the union-in violation of Janus and in violation of [his] First Amendment rights-because [he] chose to submit his e-mail directly to school officials rather than asking the union to take care of matters." (Id. ¶ 61.)
The Union Defendants argue that Martin does not have standing to challenge § 45060 because his request to cancel membership dues deductions has been processed. (See Martin Union Mem. at 31; Scott Decl. ¶¶ 3-8, Doc. 61-10.) Indeed, while the Union Defendants did not receive Martin's email, upon receipt of the Complaint on July 23, 2018, the Union Defendants wrote Martin a letter explaining that Riverside Unified did not have the authority to terminate the union membership of its employees. (See Scott Decl. ¶ 4.) On August 3, 2018, the Union Defendants informed Martin that they would consider this lawsuit a request to resign his membership and that he would be considered terminated as of July 23, 2018. (Id. ¶ 5.) Though this was fifteen days after Martin sent the email to Riverside Unified, the lapse is irrelevant because "dues deductions would have already ceased for the year as of June 30, and no further deductions were scheduled to be made in July." (Id. ¶ 7.)
*886 In response, Martin argues that the Union Defendants are attempting to moot his claims by voluntarily deciding to halt payroll deductions after he sued. (Martin Union Opp. at 32.) Further, Martin argues that his claim is not moot "because California law requires the school district and the union to continue taking membership dues from Mr. Martin's paycheck-notwithstanding his resignation from membership-until Mr. Martin submits a request to the union 'in writing' that revokes his previous authorization for payroll deductions." (Id. )
Here, it appears that Martin's claim is moot. "A case becomes moot-and therefore no longer a 'Case' or 'Controversy' for purposes of Article III-when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Yohn , 2018 WL 5264076, at *2 (quoting Rosebrock v. Mathis , 745 F.3d 963, 971 (9th Cir. 2014) ). Martin has resigned from his union and it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. Indeed, Martin would have to rejoin his union for his claim to be live, which, given his representations in this lawsuit, seems a remote possibility. Further, as the Union Defendants note, Martin has suffered no damages because of the fifteen-day delay in the processing of his resignation, and Martin does not allege otherwise. Moreover, there is no basis for Martin's contention that the Union Defendants are "required" to continue to deduct dues from his paycheck, nor does he allege that they are doing so.
However, even assuming that Martin's claim is not moot, the Court concludes that his claim fails as a matter of law. Section 45060, on its face, does not violate the First Amendment. Contrary to Martin's contention, Janus does not hold that employees have the right to resign from a union however they want, regardless of state laws that prescribe clear, common-sense procedures for doing so. Submitting a writing to the Union Defendants to halt payroll deductions is not a burdensome requirement. Because the deductions go to the Union Defendants, it makes sense that the halting of such deductions must be communicated to the Union Defendants rather than the school districts. Moreover, as the Union Defendants note, "[m]ost actions of legal significance, including registering to vote, voting itself, filing court papers, and the like, must be done in writing." (Martin Union Reply at 13.)
Accordingly, the Court GRANTS the Union Defendants' Motion to Dismiss and DISMISSES Martin's claim WITH PREJUDICE.
G. Antitrust Claim (Martin )
The Union Defendants next argue that Martin's antitrust claim fails. The Crockett court dismissed an indistinguishable claim with prejudice and the Court finds Crockett 's reasoning persuasive and applicable here. See Crockett , 367 F.Supp.3d at 1009-11, 2019 WL 1212082, at *8-9.
As in Crockett , Martin's antitrust theory is that collective bargaining agreements stemming from California's exclusive representation system are anti-competitive because they "require compensation based on union-imposed pay scales and prevent individual employees from negotiating compensation based on individual performance and merits." Id. at 1009, 2019 WL 1212082 at *8 ; see Martin First Amended Complaint ¶¶ 75-76.) The Court agrees with Crockett that "[f]ederal antitrust law, which seeks to preserve competition in the private sector, simply does not encompass the way in which a state chooses to set employment *887 terms for its public employees." 367 F.Supp.3d at 1010, 2019 WL 1212082, at *8.
More specifically, the state-action doctrine immunizes the Union Defendants from antitrust liability because federal antitrust laws do not "restrain a state or its officers or agents from activities directed by its legislature." Parker v. Brown , 317 U.S. 341, 350-51, 63 S.Ct. 307, 87 L.Ed. 315 (1943). To establish state-action immunity, "the challenged restraint ... [must] be one clearly articulated and affirmatively expressed as state policy... [and] be actively supervised by the State." N.C. State Bd. of Dental Exam'rs v. FTC , --- U.S. ----, 135 S.Ct. 1101, 1110, 191 L.Ed.2d 35 (2015). Martin argues that the Union Defendants cannot avail themselves of state-action immunity because he is challenging the actual terms of the collective bargaining agreements, not "the overall enterprise of collective bargaining." (Martin Union Opp. at 38.) Thus, Martin claims that the Union Defendants must show that the specific provisions he challenges have been "clearly articulated and affirmatively expressed as state policy." (Id. ) However, "it is indisputable that the challenged restraint-a collective bargaining agreement negotiated by a representative union-is 'clearly articulated and affirmatively expressed as state policy.' " Crockett , 367 F.Supp.3d at 1010, 2019 WL 1212082, at *9. Martin further argues that nothing in his First Amended Complaint acknowledges "active supervision" by the state, so this issue cannot be resolved on a motion to dismiss. (Martin Union Opp. at 38.) "The active supervision requirement, however, is inapplicable here because the other party to the challenged collective bargaining agreement is [a public-school district]." Crockett , 367 F.Supp.3d at 1010-11, 2019 WL 1212082, at *9. "Unlike private parties, local government entities are not subject to the 'active state supervision requirement' because they have less of an incentive to pursue their own self-interest under the guise of implementing state policies." Id. (quoting FTC v. Phoebe Putney Health Sys. Inc. , 568 U.S. 216, 226, 133 S.Ct. 1003, 185 L.Ed.2d 43 (2013) (alterations omitted)).
Further, "[t]he labor of a human being is not a commodity or article of commerce." 15 U.S.C. § 17. "Therefore, 'restraints on the sale of the employee's services to the employer'-those employment terms set forth in a collective bargaining agreement-'are not themselves combinations or conspiracies in the restraint of trade or commerce under the Sherman Act' even if they 'curtail the competition among employees.' " Crockett , 367 F.Supp.3d at 1011, 2019 WL 1212082, at *9 (quoting Apex Hosiery Co. v. Leader , 310 U.S. 469, 503, 60 S.Ct. 982, 84 L.Ed. 1311 (1940) ); see also Bodine Produce, Inc. v. U.F.W. Organizing Comm. , 494 F.2d 541, 558 (9th Cir. 1974) (rejecting interpretation of labor exemption that "would invalidate collective bargaining").
Finally, the Noerr-Pennington doctrine - by which efforts to convince the government to act in an anticompetitive manner are protected by the First Amendment - also bars Martin's antitrust claim. "Federal antitrust law ... does not 'regulate the conduct of private individuals in seeking anticompetitive action from the government.' " Crockett , 367 F.Supp.3d at 1011, 2019 WL 1212082, at *10 (quoting City of Columbia v. Omni Outdoor Adver., Inc. , 499 U.S. 365, 379-80, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) ).
Accordingly, the Court GRANTS the Union Defendants' Motion to Dismiss and DISMISSES WITH PREJUDICE Martin's antitrust claim.
*888 H. Constitutionality of Exclusive Representation (Few )
Finally, United Teachers Los Angeles argues that Plaintiff Few's claim that California's exclusive representation system violates the First Amendment is foreclosed by the Supreme Court's decision in Minnesota State Board for Community Colleges v. Knight , 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). Indeed, the Martin Plaintiffs concede that their identical claim is barred by Knight. (See Martin Union Opp. at 35.)
In Knight , the Supreme Court held that a system of exclusive union representation does not violate the speech or associational rights of individuals who are not members of the union. Knight , 465 U.S. at 271, 104 S.Ct. 1058. As Crockett noted in relation to a claim identical to Few's,[17] Janus essentially reaffirmed Knight because it distinguished between financial support for a union and the "underlying system of exclusive representation." Crockett , 367 F.Supp.3d at 1009, 2019 WL 1212082, at *8 (citing Janus , 138 S.Ct. at 2465-67.) Indeed, Janus explicitly noted that "[s]tates can keep their labor-relations systems exactly as they are-only they cannot force nonmembers to subsidize public-sector unions." Janus , 138 S.Ct. at 2485 n.27. Moreover, the Ninth Circuit recently reaffirmed Knight 's validity in the wake of Janus . See Mentele , 916 F.3d at 788. Few attempts to distinguish Mentele on the basis that it holds that Knight "continues to apply" only to "partial" state employees, rather than full-fledged public employees such as himself. (Few Opp. at 12.) Mentele 's analysis of the impact of exclusive representation on non-member's associational rights contains no such limitation, however, and was based entirely on Knight 's analysis, which involved full-fledged public employees. See Mentele , 916 F.3d at 788-90.
Accordingly, the Court GRANTS United Teachers Los Angeles' Motion to Dismiss and DISMISSES Few's exclusive representation claim WITH PREJUDICE.
IV. CONCLUSION
For the foregoing reasons, the Court GRANTS all of the Motions to dismiss currently before it. As a result, this Order completely disposes of Babb , Wilford , and Matthews , and the Defendants in each case must submit a judgment to the Court no later than five (5) days from the date of this Order. In Few , Few's first claim for relief remains, and in Martin , Plaintiffs' second claim for relief remains.

Nearly all of the moving Defendants are teachers' unions. After identifying the specific unions in each case, the Court will thereafter collectively refer to the teachers' unions as "the Union Defendants."

Plaintiffs Georgia Babb, John J. Frangiamore Jr., William Happ, Aaron Holbrook, Michelle Pecanic-Lee, David Schmus, and Abram van der Fluit opposed (Babb Opp., Doc. 77) and the Union Defendants replied (Babb Reply, Doc. 78).

Plaintiffs Scott Wilford, Bonnie Hayhurst, Rebecca Friedrichs, Michael Monge, Harlan Elrich, Jelena Figueroa, and Gene Gray opposed (Wilford Opp., Doc. 169) and the Union Defendants replied (Wilford Reply, Doc. 170).

Plaintiffs Tina Matthews and Paul Tessaro opposed (Matthews Opp., Doc. 33) and the Union Defendants replied (Matthews Reply, Doc. 37).

Plaintiffs Lori Bonner, Philip David Glick, Kimberly Jolie, and Michael Martin opposed (Martin State Opp., Doc. 79) and the State Defendants replied (Martin State Reply, Doc. 85.)

Plaintiffs opposed (Martin Union Opp., Doc. 78) and the Union Defendants replied (Martin Union Reply, Doc. 87).

Plaintiff Thomas Few opposed (Few Opp., Doc. 48) and United Teachers Los Angeles replied (Few Reply, Doc. 49.)

As noted above, although the Martin Plaintiffs bring an identical claim, they consent to its dismissal pursuant to Knight. (Martin Union Opp. at 35.)

See Pan Decl. in Babb ¶¶ 3-4, 7-10, Doc. 63-9; Mar Decl. in Babb ¶¶ 4-15, Doc. 63-6; Pan Decl. in Wilford ¶¶ 3-4, 7-10, Doc. 163-8; Schneiderman Decl. in Wilford ¶¶ 2-6, Doc. 163-6; Pan Decl. in Matthews ¶¶ 3-4, 7-10, Doc. 27-5; Mar Decl. in Matthews ¶¶ 4-15, Doc. 27-8; Pan Decl. in Martin ¶¶ 3-4, 7-10, Doc. 61-7.

The Wilford Plaintiffs suggest that their refunds for fees paid prior to Janus for post-Janus pay periods were incorrectly calculated. (See Wilford Opp. at 3-4.) The Pan Reply Declaration (Doc. 170-1) appears to answer their questions regarding the refund process, and regardless, whether the refunds were properly calculated is "not properly before the Court." See Lamberty v. Conn. St. Police Union , No. 3:15-CV-378 (VAB), 2018 WL 5115559, at *9 (D. Conn. Oct. 19, 2018).

Plaintiffs' proposed rule also fails "because affirmative defenses need not relate to or rebut specific elements of an underlying claim." Cook , 364 F.Supp.3d at 1191 (citing Jarvis v. Cuomo , 660 F. Appx. 72, 75-76 (2d Cir. 2016) ).

Plaintiffs also argue, based on Callet v. Alioto , 210 Cal. 65, 290 P. 438 (1930), that Ileto does not apply because it involved statutory causes of action instead of common law causes of action, such as those asserted by Plaintiffs here. (See Wilford Opp. at 20.) First, while Callet did distinguish between statutory and common law causes of action, the California Supreme Court has since rejected this proposition, concluding that there is "no constitutional basis for distinguishing statutory from common-law rights merely because of their origin." See L.A. Cty. v. Superior Court , 62 Cal.2d 839, 844, 44 Cal.Rptr. 796, 402 P.2d 868 (1965). Further, Plaintiffs are simply wrong about Ileto , as it upheld a law "intended to preempt common-law claims, such as general tort theories of liability." 565 F.3d at 1135.

The Matthews Plaintiffs' UCL claim is also barred by § 1159's broad language. See § 1159 (applying to "any claims or actions under the law of this state"). Furthermore, even if it were not barred by § 1159, the UCL claim fails because the Union Defendants are not a "business" and collecting agency fees in compliance with state law is not a "business act or practice." See That v. Alders Maintenance Ass'n , 206 Cal. App. 4th 1419, 1427, 142 Cal.Rptr.3d 458 (2012) (holding that homeowners' association was not subject to a UCL claim because it "does not participate as a business in the commercial market, much less compete in it").

The Union Defendants also argue that the Martin Plaintiffs lack standing to challenge § 3558 because their respective unions already have their contact information pursuant to § 3558. (Martin Union Mem. at 23.) However, the harm that Plaintiffs identify is the fact that they were allegedly compelled to share the information, and thus the fact that the unions already have such information does not deprive Plaintiffs of standing.

The Union Defendants rely on the less-stringent exacting scrutiny standard articulated by the Supreme Court in John Doe No. 1 v. Reed , 561 U.S. 186, 196, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010), requiring only a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." Although this less-stringent standard is typically applied in compelled disclosure cases and has been applied by the Ninth Circuit as recently as last year, see Ams. For Prosperity Found. v. Becerra , 903 F.3d 1000, 1008 (9th Cir. 2018), Mentele suggested that "in the context of organized labor," the more stringent standard applies. See Mentele , 916 F.3d at 790. Here, which version of exacting scrutiny is applied has no bearing on the outcome, as the Court concludes that § 3558 withstands the more stringent standard articulated in Mentele.

See also Buckley v. Valeo , 424 U.S. 1, 66, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (disclosed financial transactions with political candidate or party would "reveal much about a person's activities, associations, and beliefs") (internal quotation marks omitted); John Doe No. 1 , 561 U.S. at 194-96, 130 S.Ct. 2811 (individual's signature on petition would disclose his views on statute concerning gay rights).

Just like the Martin Plaintiffs, the plaintiff in Crockett conceded that her claim was foreclosed by Knight. See Crockett , 367 F.Supp.3d at 1009-10, 2019 WL 1212082, at *8.